## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-cr-279 (DLF)** |
| **ETHAN SEITZ,** | |
| **Defendant.** | |

## MOTION TO DISMISS OBSTRUCTION CHARGE

Ethan Seitz, through undersigned counsel, and pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v), hereby respectfully requests that the Court dismiss Count One of the Indictment, which charges him with obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2) & 2.[1]

---

[1] Mr. Seitz, through undersigned counsel, recognizes that similar motions and arguments to dismiss obstruction charges under 18 U.S.C. § 1512(c)(2) have been previously rejected by judges in this Court, including Your Honor. *See* Memorandum Opinions in *United States v. Sandlin, et al.*, No. 1:21-CR-88 (DLF), 2021 WL 5865006 (D.D.C. Dec. 10, 2021) [hereinafter "*Sandlin* mem. op."]; *United States v. Reffitt*, No. 1:21-CR-32 (DLF), 2022 WL 1404247, at *7–10 (D.D.C. May 4, 2022); *see also* Memorandum Opinions in *United States v. Andries,* No. 1:21-CR-93 (RC), 2022 WL 768684 (D.D.C. March 14, 2022) [hereinafter *Andries* mem. op.]; *United States v. Caldwell et al.*, No. 1:21-CR-28 (APM), 2021 WL 6062718 (D.D.C. Dec. 20, 2021) [hereinafter "*Caldwell* mem. op."]; *United States v. Nordean, et al.,* No. 1:21-CR-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021) [hereinafter "*Nordean* mem. op."]; *United States v. Montgomery, et al.,* No. 1:21-CR-46 (RDM), 2021 WL 6134591 (D.D.C. Dec. 28, 2021) [hereinafter "*Montgomery* mem. op."]; *United States v. Mostofsky*, No. 1:21-CR-138 (JEB), 2021 WL 6049891 (D.D.C. Dec. 21, 2021) [hereinafter "*Mostofsky* mem. op."]; *United States v. McHugh*, 1:21-CR-453 (JDB), 2022 WL 296304 (D.D.C. Feb. 1, 2022).

However, in *United States v. Miller*, Judge Nichols dismissed the obstruction count, concluding that "§1512(c)(2) must be interpreted as limited by subsection (c)(1), and thus requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." *United States v. Miller*, 1:21-CR-119 (CJN), 2022 WL 823070, at *15 (D.D.C. March 7, 2022)

In Count One, the Indictment alleges that, on or about January 6, 2021, within the District of Columbia and elsewhere, Mr. Seitz "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and committing an act of civil disorder." ECF No. 8.

The Court should dismiss Count One because it is fatally flawed for several reasons.

First, as Judge Nichols found in another January 6 case, the conduct Mr. Seitz has been accused of committing cannot qualify as conduct that "otherwise obstructs, influences, or impedes" an official proceeding within the meaning of Section 1512(c)(2). *Miller* mem. op. at *15. Second, 18 U.S.C. § 1512(c)(2) only prohibits the corrupt obstruction of tribunal-like proceedings before Congress related to the administration of justice. It does not prohibit the obstruction of a ceremonial proceeding before Congress like the certification of the Electoral College vote. Thus, Mr. Seitz's alleged obstruction of the certification of the electoral college vote is not a crime under 18 U.S.C. § 1512(c). Third, Section 1512(c)(2) is unconstitutionally vague in that "corruptly" is undefined and itself vague.

For these reasons, and in light of the demands of the rule of lenity, Mr. Seitz respectfully requests that the Court dismiss Count One.

---

[hereinafter "*Miller* mem. op."]. Relying on the same analysis, Judge Nichols did the same in *United States v. Fischer*, 1:21-CR-234 (CJN), 2022 WL 782413, at *4 (D.D.C. March 15, 2022).

The *Miller* decision is currently before the D.C. Circuit. In light of the split of authority and the pending decision from the Circuit, Mr. Seitz respectfully submits this Motion for the Court's consideration.

## COUNT ONE FAILS TO ALLEGE CONDUCT THAT "OTHERWISE OBSTRUCTS, INFLUENCES, OR IMPEDES ANY OFFICIAL PROCEEDING"

Count One fails to allege an *actus reus* that falls within 18 U.S.C. § 1512(c)(2), and so it must be dismissed. *See Miller* mem. op. at *15 (dismissing obstruction count in a January 6 case where Indictment did not allege or imply that defendant "took some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence Congress's certification of the electoral vote.").

Section 1512(c) of Title 18 provides:

> (c) Whoever corruptly—
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

Section 1512(c)(2) prohibits "otherwise obstruct[ing], influenc[ing], or imped[ing] any official proceeding," where "otherwise" is to be read in conjunction with the whole of 1512(c) and within its broader context. As Judge Nichols found in the attached opinion and as former Attorney General Bill Barr has explained, Supreme Court case law demonstrates that this is so. Relying on *Begay v. United States*, 553 U.S. 137 (2008), and *Yates v. United States,* 574 U.S. 528 (2015), the former Attorney General wrote:

> [I]t is clear that use of the word "otherwise" in the residual clause [of Section 1512(c)(2)] expressly links the clause to the forms of obstruction specifically defined elsewhere in the provision. Unless it serves that purpose, the word "otherwise" does no work at all and is mere

> surplusage. [An] interpretation of the residual clause as covering any and all acts that influence a proceeding reads the word "otherwise" out of the statute altogether. But any proper interpretation of the clause must give effect to the word "otherwise;" it must do some work.

Memorandum from William Barr to Deputy Attorney General Rod Rosenstein and Assistant Attorney General Steve Engel of June 8, 2018 [hereinafter "Barr Memo"] at 4 (emphasis omitted).[2] After discussing *Begay* and *Yates* and how those cases emphasized that "specific examples enumerated prior to the residual clause are typically read as refining or limiting in some way the broader catch-all term used in the residual clause," he continued,

> Consequently, under the statute's plain language and structure, the most natural and plausible reading of 1512(c)(2) is that it covers acts that have the same kind of obstructive impact as the listed forms of obstruction – *i.e.*, impairing the availability or integrity of evidence – but cause this impairment in a different way than the enumerated actions do. Under this construction, then, the "catch all" language in clause (c)(2) encompasses any conduct, even if not specifically described in 1512, that is directed at undermining a proceeding's truth-finding function *through actions impairing the integrity and availability of evidence.*

*Id.* at 4–5 (emphasis omitted) (emphasis added).[3] The similar structure of the residual clauses in Section 1519, at issue in *Yates*, and Section 1512(c) allows their meanings

---

[2] Available at https://s3.documentcloud.org/documents/5638848/June-2018-Barr-Memo-to-DOJ-Muellers-Obstruction.pdf (last visited July 12, 2022).

[3] Although *Yates* was a plurality opinion, Justice Alito's concurring opinion also supports the former Attorney General's and Mr. Seitz's position limiting 1512(c)(2) to impairing evidence. According to Justice Alito, the list of nouns, list of verbs, and title in Section 1519 all show that the statute in question did not reach the conduct of the defendant in that case. *Yates*, 574 U.S. at 549 (Alito, J., concurring). Regarding the nouns, Justice Alito considered the application of both *noscitur a sociis* and *ejusdem generis* to find that the term "tangible object" should refer to "something similar to records or documents." *Id.* at 549–50. In this case, Section 1512(c)(1) refers to "a record, document, or other object." There is no allegation that Mr. Seitz interfered with any such item. 1512(c)(2) should be read to comport with 1512(c)(1)

to be interpreted similarly. Although 1519 and 1512(c) differ in that the residual clause in 1519 is not separated out by a line break, semicolon, or new section, while 1512(c)(2) is its own subsection, this does not resolve the breadth of "otherwise" and leaves ambiguity. *See Miller* mem. op. at *10–11. When ambiguity remains in a criminal statute after using traditional tools of interpretation, the canon of lenity applies. *See infra* pp. 20–22.

The former Attorney General noted that case law indicates the residual clause should only apply to "attempts to interfere with, or render false, evidence that would become available to a proceeding" or "to prevent the flow of evidence to a proceeding." Barr Memo at 5 (citing *United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014) (soliciting tips from corrupt cops to evade surveillance); *United States v. Phillips*, 583 F.3d 1261 (10th Cir. 2009) (disclosing identity of undercover agent to subject of grand jury drug investigation)); *see also, e.g.*, *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (providing false testimony to a grand jury); *United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014) (making false statements to court during a preliminary injunction hearing); *United States v. Lucas*, 499 F.3d 769, 780–81 (8th

---

and so should only apply to evidentiary objects. Justice Alito then looked at the verbs and noticed some glaring problems when trying to apply those verbs to any tangible object. *Id*. at 551 ("How does one make a false entry in a fish?"). Because there was no evidence "obstruct[ed], influence[d], or impede[d]" by Seitz (nor will there ever be), the verbs in Section 1512(c)(2) have no object to reference. Finally, Justice Alito pointed to the title of the statute: "Destruction, alteration, or falsification of records in Federal investigations and bankruptcy" and noted "This too points toward filekeeping, not fish." *Id*. at 552. The title of Section 1512, "Tampering with a witness, victim, or an informant," is likewise limited to certain manners of interfering with evidence, as well as certain types of evidence, in adjudicative or tribunal-like proceedings. This statute's title clearly supports a finding that it was not intended to apply to all forms of obstructive conduct.

Cir. 2007) (convincing others to falsely claim ownership of a firearm); *United States v. Mintmire*, 507 F.3d 1273, 1290 (11th Cir. 2007) ("attempt[ing] to orchestrate" grand jury witness's testimony by sending notes to attorney who in turn "coached" the witness); *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (obtaining false statements in a court proceeding); *United States v. Pugh*, 945 F.3d 9, 22–23 (2d Cir. 2019) (destroying evidence on several USB drives and iPod); *United States v. Burge*, 711 F.3d 803, 808 (7th Cir. 2013) (providing false answers to interrogatories in a civil lawsuit). As the former Attorney General correctly observed, "the most natural and plausible reading of 1512(c)(2)" requires conduct that impairs the integrity and availability of *evidence*. Barr Memo at 4.

This is entirely consistent with the legislative history of Section 1512(c)(2), as noted by the former Attorney General and by Judge Nichols in *Miller*. *See Miller* mem. op. at *13–14. Section 1512(c) was passed as part of the Sarbanes-Oxley Act of 2002, "[a]n Act to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to securities laws, and for other purposes." Sarbanes-Oxley Act, Pub. L. No. 107-204, 116 Stat. 745 (2002). Subsection (c) was added in part to ensure that there would be liability for those who destroyed records before an "official proceeding" had convened, even if they did not foresee one convening or if they had acted themselves, as opposed to causing others to act. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 707 (2005). This subsection closed a loophole in 1512(b)(2), which only criminalizes directing others to obstruct proceedings and so allowed Arthur Anderson LLP to evade liability for destroying

documents in the wake of the Enron scandal. *See id.*

The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations." S. Rep. No. 107-146, at 2 (2002). The Committee Report noted that much of Arthur Andersen's document destruction was "undertaken in anticipation of a SEC subpoena to Andersen for its auditing and consulting work related to Enron." *Id.* at 4. Congress was adamant that "[w]hen a person destroys evidence with the intent of obstructing any type of investigation and the matter is within the jurisdiction of a federal agency, overly technical legal distinctions should neither hinder nor prevent prosecution and punishment." *Id.* at 6–7. Thus, the legislative history of Section 1512(c)(2) "was expressly designed to 'clarify and close loopholes in the existing criminal laws *relating to the destruction or fabrication of evidence* and the preservation of financial and audit records.'" Barr Memo at 5 (quoting S. Rep. No. 107-146, at 14–15) (emphasis added). As Judge Nichols put it, "in the wake of the Enron scandal, Congress was faced with a very specific loophole: that then-existing criminal statutes made it illegal to cause or induce *another* person to destroy documents, but it did not make it illegal to do by oneself. Congress closed that loop by passing subsection (c), and *nothing in the legislative history suggests a broader purpose than that*." *Miller* mem. op. at *14 (second emphasis added). Likewise, the former Attorney General also observed that "reading the residual clause as an all-encompassing proscription cannot be reconciled either with the other subsections of

§ 1512, or with the other obstruction provisions in Title 18 that must be read *in pari passu* with those in § 1512." Barr Memo at 5.

If this Court were to interpret Section 1512(c)(2) as the government wants it to—as an all-encompassing catch-all, including something as unique as protesting the election certification proceedings—"clause (c)(2) would render all the specific terms in clause (c)(1) surplusage; moreover, it would swallow up all the specific prohibitions in the remainder of § 1512—subsections (a), (b), and (d)." *Id*. And, as Mr. Barr continued, "[m]ore than that, it would subsume virtually all other obstruction provisions in Title 18. . . . It is not too much of an exaggeration to say that, if § 1512(c)(2) can be read as broadly as being proposed, then virtually all Federal obstruction law could be reduced to this single clause." *Id*.; *see also Marx v. General Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). This is supported by the narrow scope of other Section 1512 clauses, such as the focus in subsection (a) on use of force or threatened use, in (b) on verbal conduct like threats, in (c)(1) on document destruction, and in (d) on intentional harassment. Were 1512(c)(2) to be read broadly, it would subsume these other clauses.

In sum, the canons of construction employed by the Court in *Begay* and *Yates*, the text, structure, and practical application of Section 1512(c)(2) as demonstrated in caselaw, and the legislative history all support a holding that the "otherwise" clause in § 1512(c)(2) must be construed in a similar vein to the terms that are in clause one. Thus, in order for Count One to sufficiently allege a violation, it must allege that Mr.

Seitz took "some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence an official proceeding." *Miller* mem. op. at *15. Because no such allegation exists in the Indictment here (nor can there ever be one), this Court should adopt the reasoning applied by Judge Nichols in *Miller* and dismiss Count One of the Indictment alleging a violation of § 1512(c)(2).

### THE CERTIFICATION OF THE ELECTORAL VOTE WAS NOT AN "OFFICIAL PROCEEDING"

I.    **Section 1512(c)(2) prohibits obstructing only "official proceedings," which are tribunal-like proceedings relating to the administration of justice.**

Congress defined the term "official proceeding" for purposes of Sections 1512 and 1513 in Section 1515(a)(1), as follows:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

The language of the statute suggests that the term "official proceeding" refers to tribunal-like proceedings relating to adjudication, deliberation, and the administration of justice, all features which the electoral count lacks. As such, though the counting of the electoral vote takes place before Congress, it is not an "official proceeding."

A.     *The text in and around Sections 1515 and 1512 support this view.*

This Court recently examined the qualities of an "official proceeding," holding that the "plain meaning of § 1512(c)(2) and § 1515(a)(1)(A) is unambiguous—an informal, routine agency action like clearance-adjudication does not fall within the statutory definition of an "official proceeding." *U.S v. Guertin*, 1:21-CR-262 (TNM), 2022 WL 203467, at *6 (D.D.C. Jan. 24, 2022). Instead, this Court found that an "official proceeding" must "resemble a formal tribunal." *Id.* at *7. By the rationale applied by this Court in *Guertin*, the electoral count likewise does not qualify as an "official proceeding."

In *Guertin*, this Court began by noting that "official proceeding" can have a broad or narrow definition. This Court found for good reason that the narrow definition must be applied. *Id.* at *6. The Court then went on to analyze the text of 1512(c)(2), observing that "official" appears before "proceeding," thus "textually limiting covered proceedings to those bearing indicia of officiality." *Id* at *7. Next, the Court found that the definitional provisions in 1515(a)(1) support that reading, observing that the "word 'before' suggests an 'official proceeding' would typically entail convening a formal tribunal or adjudicative body before which parties are compelled to appear." *Id.* (emphasis omitted). After careful textual analysis, this Court held that taken together, Sections 1515(a)(1) and 1512 make clear that "a covered 'proceeding before a Federal government agency' must resemble a formal tribunal." *Id.*; *see also United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013) (analyzing the text in and surrounding Sections 1515 and 1512 to determine that the phrase "a proceeding before a Federal Government agency which is authorized by law"

in Section 1515(a)(1)(C) does *not* include FBI investigations); *United States v. Ramos,* 537 F.3d 439, 462–63 (5th Cir. 2008) (stating that "use[ of] the preposition 'before' in connection with the term 'Federal Government agency' . . . implies that an 'official proceeding' involves some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency."). The foregoing analysis demonstrates that Section 1515(a)(1)(B), and therefore Section 1512(c)(2), which relies on that definition, does not include the counting of electoral votes.

      B.    *The electoral count is not an official proceeding because it is a ceremonial event.*

Just as the "criminal investigation" in *Ermoian* and the "routine certification" in *Guertin* did not meet the definition of an "official proceeding" under the obstruction of justice statute with this full context, the election certification proceedings here also do not qualify. Indeed, when considering Congress's role in counting electoral votes pursuant to the 12th Amendment and the Electoral Count Act of of 1887, later codified in 3 U.S.C. § 15, it is clear that the electoral count is a ceremonial and administrative event, bearing no resemblance to a tribunal. The Twelfth Amendment and 3 U.S.C. § 15 place responsibility on Congress to count electoral votes *after* the states have already heard disputes and certified the vote. *See Bush v. Gore*, 531 U.S. 98, 113 (2000) (Rehnquist, J. concurring) (the "State's selection of electors shall be conclusive, and shall govern in the counting of the electoral votes."). The Joint Session does not have the power under the Constitution to reject the votes of any State. *See* Vasan

Kesavan, *Is the Electoral Count Act Unconstitutional?*, 80 N.C. L. Rev. 1653, 1709 (2002) [hereinafter Kesavan].

Thus, though the election certification proceedings may be "official," no one is "before" the Congress in those proceedings, the proceedings entail no formal investigation or consideration of facts, and there is little to no discretion on the part of the Joint Session of Congress and its Presiding Officer. No parties are summoned to attend the proceedings; no witness or evidence is produced, offered, or taken; and nothing is adjudicated by Congress. As such, the certification proceedings are nothing like tribunal proceedings, and have nothing in common with the "business done in courts" or acts "done by the authority or direction of the court, express or implied." *See Ermoian*, 752 F.3d at 1170 ("'Proceeding' is a word much used to express the business done in courts and 'is an act done by the authority or direction of the court, express or implied.'") (quoting *Black's Law Dictionary* (8th ed. 2004)). Instead, the vote count is entirely ministerial and ceremonial.

The history of "objections" lodged at the Electoral Count further demonstrate the ceremonial nature of the electoral count. Past objections were mostly made in the 1800s because of the confusion regarding when new states were admitted to the union and how that impacted their votes. Objections were ultimately rejected because it was determined that the Joint Session did not have the authority to judge the proceedings already had in the states. *See* Kesavan, *supra*, at 1678–94. In 1876, the most tumultuous American election thus far, Samuel Tilden and Rutherford Hayes were separated by one electoral vote and four states sent multiple electoral returns

to Congress. *Id.* Congress recognized that the Joint Session did not have the authority to resolve the issue, and so instead, it formed a separate commission to sort through the chaos and decide the issues of fact and law presented. *Id.* To address issues like this in the future, Congress enacted the Electoral Count Act of 1887, giving states the responsibility of resolving disputes about electors and their appointments and certifications. Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 Fla. L. Rev. 540, 543 (July 2004).

In 1969, there was an objection that a vote sent up to Congress from North Carolina should not be counted because it reflected the "faithless" elector who had refused to give his vote to Richard Nixon, despite Nixon winning the popular vote in that state. The objection was rejected, and the vote at issue counted, because of the strong reminder of representatives such as R. Rarick, who said:

> We are not election supervisors nor given the discretion to re-compute the vote received from a sovereign state. The Constitution clearly proscribes our duty as to 'count the electoral votes,' the *ministerial* function of a central collecting agency and a tabulating point.

*See* Kesavan, *supra,* at 1694, 2022 (emphasis added).

For all these reasons, the Electoral Count is not "a proceeding" akin to a formal hearing, nor it is "tribune-like," both of which this Court required in *Guertin*. Rather, it is a ceremonial meeting of both houses of Congress. While steeped in tradition, it decides nothing. It is a political performance conducted to give the country a feeling of finality over the already final election results. As a result, the Electoral Count is not an "official proceeding," and Count One of the Indictment should be dismissed.

## SECTION 1512(C)(2) IS UNCONSTITUTIONALLY VAGUE BECAUSE "CORRUPTLY" IS VAGUE

The Court should dismiss this Count for a third and related reason, which is that Section 1512(c)(2) as applied to Congressional proceedings fails to provide constitutionally required notice of what the statute prohibits, because the contextual meaning of "corruptly" is vague. In the alternative, the only construction of "corruptly" that might enable the statute to pass constitutional muster would require acting with the intent to obtain an unlawful advantage for oneself or an associate, contrary to the due administration of justice. But because the Indictment against Mr. Seitz fails to allege anything relating to the administration of justice, the Court should dismiss Count One in any case.

In order to comply with the requirements of due process, a statute must give fair warning of the prohibited conduct. *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964). A statute is unconstitutionally vague under the due process clause if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595–96 (2015); *see also Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983) ("[A] penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which 'policemen, prosecutors, and juries . . . pursue their personal predilections.'"); *Connally v. General Construction Company*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must

14

necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."). The allegations against Mr. Seitz in Count One of the Indictment fail in both respects.

## I.      "Corruptly," as used in Section 1512(c)(2), is unconstitutionally vague.

In *United States v. Poindexter,* 951 F.2d 369 (D.C. Cir. 1991), the Court of Appeals for this Circuit ruled that the word "corruptly" is prone to causing vagueness in a case concerning Section 1505, which criminalizes

> [w]hoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress –

18 U.S.C. § 1505.

Congress later added a definition of "corruptly" that is only applied to § 1505 via Section 1515(b), but in *Poindexter*, the court analyzed the text without that context. The court stated that the word "corruptly" in the text "must have some meaning, because otherwise the statute would criminalize all attempts to 'influence' congressional [proceedings] – an absurd result that Congress could not have intended in enacting the statute." *Poindexter*, 951 F.2d at 377 (analyzing application of § 1505 as applied to making false statements to Congress).

The court also found that the dictionary alone did not make clear what that meaning is, as there are several dictionary definitions:

> "[C]orruptly" is the adverbial form of the adjective "corrupt," which means "depraved, evil: perverted into a state of moral weakness or wickedness . . . of debased political morality; characterized by bribery, the selling of political favors, or other improper political or legal transactions or arrangements." A "corrupt" intent may also be defined as "the intent to obtain an improper advantage for [one]self or someone else, inconsistent with official duty and the rights of others."

*Id.* at 378 (quoting *United States v. North*, 910 F.2d 843, 881–82 (D.C. Cir. 1990)). Poindexter argued that "so defined, the term 'corruptly' is vague as used in § 1505." *Id.* (emphasis omitted). Mr. Seitz argues that, so defined, "corruptly" as used in § 1512 is as well.

The Court of Appeals acknowledged, and this Court must as well, that "on its face, the word 'corruptly' is vague; that is, in the absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application.'" *Id*. And, just as the court found that "corruptly influencing" a congressional inquiry "does not at all clearly encompass lying to Congress, which is, by way of contrast, clearly a violation of § 1001," *id.*, this Court should acknowledge that the conduct alleged in the instant Indictment—which also would clearly violate another statute (40 U.S.C. § 5104)— does not clearly fall within "corruptly . . . otherwise obstructing, influencing, or impeding" an official proceeding, using the dictionary definitions of "corruptly." That is because "[t]he various dictionary definitions of the adjective 'corrupt'" are themselves vague. *Id*. "Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific – indeed they may be less specific – than 'corrupt.'" *Id*. at 379. Because of this, the Court of Appeals for this Circuit found the word "corruptly" as

used in Section 1505 "too vague to provide constitutionally adequate notice that it prohibits lying to the Congress." *Id.*

Applying the logic of *Poindexter*, the only way the use of the word in Section 1512 can avoid the same fate is if the text or other context "clearly indicates a more specific meaning of the term 'corruptly,'" and Mr. Seitz's "conduct comes within that meaning." *Id.* (considering whether the use of the word, the legislative history of § 1505, or judicial gloss on the statute provided a clear indication of a more specific meaning of the word in that statute, and ultimately concluding that it did not).

In *Poindexter*, the court first considered whether the usage of the word "corruptly" gave it more definition. *Id.* The court noted that

> the verb "corrupt" may be used transitively ("A corrupts B," i.e., "A causes B to act corruptly") or intransitively ("A corrupts," i.e., "A becomes corrupt, depraved, impure, etc."). So too, the adverbial form "corruptly" may have either the transitive or the intransitive sense. *See* 3 Oxford English Dictionary 974 (2d ed. 1989) ("corruptly" may mean either "by means of corruption or bribery," i.e., by means of corrupting another, or acting oneself "in a corrupt or depraved manner").

*Id.* But the court found that this analysis did not evade the vagueness in the word itself because

> either a transitive or an intransitive interpretation would still be unconstitutionally vague . . . if more specific content is not given to the word "corruptly." Reading "corruptly" to prohibit one from influencing another to act "immorally" or "improperly" provides no more guidance than does reading it to prohibit one from acting "immorally" or "improperly" oneself.

*Id.*

The same issue is presented here: No matter how "corruptly" is used in Section 1512(c)(2)—transitively or intransitively—the word lacks definition and remains too vague to provide constitutionally-required notice.

## II.     The emerging definitions of "corruptly" in this District demonstrate how vague the term is.

This Court's and its colleagues do not disagree that, in the abstract, "corruptly" is somewhat vague, and acknowledge that many of words often used to define it are of little help. *See, e.g.*, *Sandlin* mem. op. at *12 ("But defining 'corruptly' to involve 'wrongfulness' presents a closer question because it may be subject to the same infirmities that *Poindexter* found in the words 'immoral' and 'improper.'") (citing *Poindexter*, 951 F.2d 369, 379 (D.C. Cir. 1991)); *Caldwell* mem. op. at *9 (noting that *Poindexter* provided that "the word 'corruptly' is vague" and that, "in absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application.'"); *Mostofsky* mem. op. at *10 (adopting reasoning of both *Sandlin* mem. op. and *Caldwell* mem. op.).

These courts have found that that judicial gloss provides further, and sufficient, definition to the word "corruptly." But they do not agree on what that gloss provides. All appear to agree that "corruptly" requires proof of intent to obstruct an official proceeding, and that there must be some nexus, meaning a relationship in time, causation, or logic, between the defendant's actions and the official proceeding in question. But they do not all agree on the rest of the definition of "corruptly," nor do they arrive at their conclusion the same way.

18

In a previous case, this Court appeared to conclude that judicial gloss provides notice that "corruptly" requires proof of acting "wrongfully." *Sandlin* mem. op. at *11–13. The court found that "in considering the meaning of 'corruptly' (or wrongfully), courts have drawn a clear distinction between lawful and unlawful conduct," drawing "a line that is consistent with the definition of 'wrongful': '[t]hat is contrary to law, statute, or established rule.'" *Id.* at *12–13 (quoting *Wrongful*, def. 3(a), *Oxford English Dictionary* (2d ed. 1989)). According to this Court, "the ordinary meaning of 'wrongful,' along with the judicial opinions construing it, identify a core set of conduct against which § 1512(c)(2) may be constitutionally applied—'independently criminal' conduct . . . that is 'inherently malign,'" in addition to being intended to obstruct a proceeding with which it has a nexus. *Id.* at *13. Thus, the Court concluded that the statute is not vague as applied against the defendants accused of illegal conduct intended to obstruct an official proceeding, at least so long as their conduct is inherently malign. *Id.* This Court allowed that more conduct may fall within the definition of "corrupt," but declined to determine its outer limits. *Id.*

In the *Nordean* case, Judge Kelly appeared to follow the logic of *Sandlin*, concluding that acting "corruptly" means at least "intentionally" and "wrongfully," and that the "unlawful means" the defendants allegedly used would qualify. *Nordean* mem. op. at *10. However, Judge Kelly seemed to be more open to the notion that unlawful purposes, as opposed to unlawful means (such as breaking the law), can satisfy the "wrongfulness" prong perceived as a limitation on the meaning of "corrupt" in section 1512(c)(2). *Nordean* mem. op. at *11.

19

In *Mostofsky,* Judge Boasberg also closely followed this Court's rationale. However, that court interpreted *Sandlin* to stand for the proposition that "corruptly" *requires* "that defendants acted '*unlawfully*, and with the intent to obstruct[,]' impede, or influence an official proceeding." *Mostofsky* mem. op. at *11 (emphasis added) (alteration in original).

Judge Mehta took yet another view of what the judicial gloss provides. In *Caldwell,* Judge Mehta concluded that case law provides notice that "corrupt" action involves "consciousness of wrongdoing" undertaken with specific intent to obstruct a congressional proceeding. *Caldwell* mem. op. at *10–11. But not all conscious wrongdoing suffices, per this opinion: Although preplanning to obstruct the vote count, wearing paramilitary gear, committing forcible trespass and assault, and coordinating movement through the Capitol would apparently qualify, "mere . . . trespass" apparently would not. *Id.* at *13. Thus, Judge Mehta perceived an extra limitation on what it means to act corruptly (*i.e.*, it includes consciously violating crimes at least more serious than trespass), just as this Court did (*i.e.*, it includes conduct that is both unlawful and "inherently malign").

In *Montgomery*, Judge Moss appeared to track Judge Mehta's reasoning, finding that case law preceding and following *Poindexter* provides notice that, to prove a defendant acted corruptly, the government must establish intent to obstruct an official proceeding and "consciousness of wrongdoing." *Montgomery* mem. op. at *20–21. However, Judge Moss allowed that there could be further requirements, including proof that the defendant used "some unlawful method" and acted "with a

hope or expectation of . . . [a] benefit to oneself or a benefit to another person." *Id.* at *22 n.5.

These various spins on what it means to act "corruptly" under Section 1512(c)(2) demonstrate that the defendants in all of these cases were right that the law is not clear about what "corruptly" means, and that neither the text nor the judicial gloss on it provided them with sufficient notice that it could be applied against their conduct.

## THE RULE OF LENITY CONFIRMS THAT THE COURT SHOULD DISMISS COUNT ONE

Finally, if recourse to any of the "traditional tools of statutory construction leaves any doubt" about the meaning of "corruptly obstructing, influencing, or impeding a proceeding before Congress," as those terms are used in Section 1512(c)(2), this Court could also invoke the rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Yates*, 574 U.S. at 547–48 (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000), in turn quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)). As it was in *Yates*, "[t]hat interpretative principle is relevant here, where the Government urges a reading of [Section 1512(c)(2)] that exposes individuals to 20-year prison sentences" for obstructing any proceeding before Congress in any manner that it deems "corrupt." *Id.* at 548 (citing *Liparota v. United States*, 471 U.S. 419, 427 (1985)) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.").

In determining the meaning of "corruptly obstructing, influencing, or impeding a proceeding before Congress," as those terms are used in Section 1512, it would be "appropriate, . . . before [choosing] the harsher alternative, to require that Congress should have spoken in language that is clear and definite," as it was when the Court interpreted Section 1519 in *Yates*. *Id.* (quoting *Cleveland*, 531 U.S. at 25, in turn quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 222 (1952)). Because Congress failed to do so, and the government has accused Mr. Seitz such that it is not "clear and definite" that his conduct violates Section 1512(c)(2), this Court should dismiss Count One of the Indictment against him.

## CONCLUSION

For all of these reasons, and such others as may be advanced in further briefing on this motion and a hearing on this matter, Mr. Seitz respectfully requests that the Court dismiss Count One of the Indictment.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
JOSE GERMAN
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500