IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CASE NO. 21-cr-279 (DLF)** |
| | : | |
| **ETHAN C. SEITZ,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT FIVE OF THE INDICTMENT

The United States respectfully opposes defendant Ethan Seitz's motion to dismiss Count Five of the Indictment. ECF No. 43. In his motion, Seitz contends that Count Five, which charges that he "willfully and knowingly paraded, demonstrated, and picketed in a Capitol Building," in violation of 40 U.S.C. § 5104(e)(2)(G), ECF No. 8 at 3, violates the First Amendment and fails to state an offense. Those contentions lack merit, and Seitz's motion should be denied.

### BACKGROUND

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the Capitol Building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking

windows. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

On January 13, 2021, the FBI received a tip that Ethan Seitz had posted statements on his Facebook page indicating that he had participated in the attack on the Capitol on January 6. The FBI obtained a search warrant for Seitz's Facebook account and found messages in which Seitz indeed had discussed his participation. At 12:48 p.m. on January 6, 2021, Seitz wrote, "There is a militia here that wants to storm the Capitol and take the building after Trumps speech ☺." Later that day, Seitz then narrated his participation in the breach in nearly real time. At 2:25 p.m., Seitz wrote "I'm goin in the capitol." Two minutes later: "I just climbed in through a broken window." According to U.S. Capitol Police surveillance footage, Seitz entered the Capitol Building at approximately 2:25 p.m. (when he climbed in through a broken window near the Senate Wing Doors). Inside the Capitol Building, Seitz traveled to the Crypt, and upstairs to the Rotunda, East Foyer, and Ohio Clock corridor, before returning downstairs to climb out another window near the Senate Wing Doors at approximately 2:55 p.m. At 3:03 p.m., Seitz sent another series of Facebook messages describing what he had done, stating "I was inside the capitol and was smashed in a group of people. They fuckin pepper sprayed us and hit us with tear gas canisters inside the capitol building," and "I was inside upstairs in the capitol pushing with a group of people and they fuckin gassed us again. And pepper sprayed us." He continued, "I had to climb out a window. Couldnt breath or see." To another individual, he wrote, "I climbed through a broken window of the capitol. We pushed and pushed bro. I've been gassed 2 or 3 times. And pepper sprayed. I had to climb back out I couldnt breath."

Seitz remained in the area of the Capitol Building at least until 4:28 p.m., grabbing a police officer's baton as the officer pushed him back. Later that evening, near the Capitol, an individual interviewed Seitz and posted the interview on social media. In the interview, Seitz claimed that he "made it to the other side of the building" before encountering a door locked by the "cops" that his group pushed through in order to let rioters through another entrance. He said his group had been tear gassed and pepper sprayed. In another Facebook message, he wrote, "Yeah I didnt really prepare for that. I didnt expect to be on the frontline storming the capitol and taking the building lol." He also explained that he had come to Washington, D.C. because he was concerned about a "fraudulent election," which he saw as a "coup against Trump."

On March 18, 2021, Seitz was charged by complaint in connection with his participation in the Capitol breach. The following day, he was arrested in Bucyrus, Ohio. ECF No. 5. Seitz spoke with the FBI and agreed that he had been trying to send a message to Congress on January 6, motivated by his belief that the presidential election was fraudulent. He also agreed that the crowd inside the Capitol was trying to stop Congress from "doing what they were doing." He again acknowledged that he had been part of a group inside the Capitol that was pushing and "going where the cops didn't want people."

On April 2, 2021, the grand jury returned an indictment charging Seitz with five offenses: obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count One), entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); and parading, demonstrating, or picketing in a Capitol

building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five).  ECF No. 8.  Seitz now moves to dismiss Count Five on various grounds.

Congress passed the predecessor statute to Section 5104, which prohibits certain "unlawful activities" in Capitol Buildings, or on Capitol Grounds, or both, in 1946.  *See* Act of July 31, 1946, 60 Stat. 719, 720 (then codified at 40 U.S.C. § 193); *see Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 53 (D.D.C. 2000).  One provision in the 1946 legislation made it a crime to "parade, stand, or move in processions or assemblages" or to display "any flag, banner or device designed or adapted to bring into public notice any party, organization, or movement" on Capitol Grounds.  *See* 40 U.S.C. § 193g (1964).[1]  In 1967, Congress enacted the provision at issue here, which makes it a crime "willfully and knowingly [to] parade, demonstrate, or picket in any of the Capitol Buildings."  40 U.S.C. § 5104(e)(2)(G) (originally enacted as 40 U.S.C. § 193f(b)(7)).  The 1967 legislation thus "ma[de] clear that the 1946 act relates not only to the Capitol Grounds but also to acts committed within the Capitol Building itself as well as other buildings located on the Capitol Grounds."  113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. Anderson).  In 1972, a three-judge panel of this Court struck down the prohibition in Section 193g (parading on Capitol Grounds), reasoning that although the government had a substantial interest in protecting the Capitol Grounds, that interest was not sufficient to "override the fundamental right to petition 'in its classic form' and to justify a blanket prohibition of all assemblies, no matter how peaceful and orderly, anywhere on Capitol Grounds."  *Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 585 (D.D.C. 1972).  In reaching that conclusion, the three-judge panel identified

---

[1] The prohibition contained certain exceptions not relevant here.  *See* 40 U.S.C. §§ 193j & 193k (1964).

4

"existing laws regulating conduct" in the Capitol that its decision did not affect, including the prohibition at issue here. *See id.* at 587-88.

## LEGAL STANDARD

A defendant may move before trial to dismiss an information, or a count thereof, for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). The main purpose of a charging document, such as an indictment or (as here) an information, is to inform the defendant of the nature of the accusation. *See United States v. Ballestas*, 795 F.3d 138, 148-149 (D.C. Cir. 2015) (discussing purpose of an indictment). Thus, an information need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). When assessing the sufficiency of criminal charges before trial, an information "must be viewed as a whole and the allegations [therein] must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)). The "key question" is whether "the allegations … , if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged." *Id.*

## ARGUMENT

Seitz advances three arguments: (1) Section 5104(e)(2)(G) is "substantially overbroad" (Mot. 2-7); (2) Section 5104(e)(2)(G) is "unconstitutionally vague on its face" (Mot. 7-11); and (3) Count Five, which charges a violation of Section 5104(e)(2)(G), fails to state an offense (Mot. 11-12). None of those arguments has merit.

### I. Section 5104(e)(2)(G) is not constitutionally overbroad.

In the First Amendment context, as in others, "[f]acial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). Facial overbreadth challenges—in which a defendant asserts that a statute, constitutionally applied to her,

is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *id.* at 449 n.6 (internal quotation marks omitted)—are even more exceptional. "'Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment,'" overbreadth is "'"strong medicine"'" to be employed "'"only as a last resort."'" *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)); *cf. Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct") (emphasis omitted).

The Supreme Court has therefore "vigorously enforced the requirement that a statute's overbreadth be *substantial* . . . relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* at 801. And laws that are "not specifically addressed to speech" are far less likely to present such a danger. *Hicks*, 539 U.S. at 124; see *id.* (observing that "an overbreadth challenge" to such a law will "[r]arely, if ever, . . . succeed").

Seitz's challenge fails that demanding standard. Because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers," the "first step in overbreadth analysis is to construe the challenged statute." *Williams*, 553 U.S. at 293. The prohibition in Section 5104(e)(2)(G) presents "no ambiguity"; it "tells the citizen that it is unlawful for him" to parade, demonstrate, or picket inside the Capitol Building. *Jeanette Rankin Brigade*,

6

342 F.Supp. at 583.  The operative verbs—parade, demonstrate, and picket—principally target conduct (*i.e.*, disruptive conduct) rather than speech, and those verbs are paired with the "willfully and knowingly" scienter requirements, *see Williams*, 553 U.S. at 294 (focusing on scienter requirement in determining that statute was not overbroad).  At the very least, Seitz cannot show that Section 5104(e)(2)(G) is "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted).  Seitz's own prosecution—which involved physically trespassing into the restricted Capitol on the heels of others who had forcibly breached the building and physically resisting police once inside the building—is illustrative of the numerous constitutionally legitimate applications of the statute to conduct and unprotected speech.  And far from showing a "realistic danger" of constitutionally problematic applications in other cases, *Taxpayers for Vincent*, 466 U.S. at 801, Seitz fails to identify a single actual example of a prosecution based on protected speech.  Moreover, "[e]ven protected speech is not equally permissible in all places and at all times." *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788, 799 (1985).   As Judge Friedman recognized (in a case Seitz cites), the Capitol Building is a nonpublic forum, and the government may restrict speech inside the building as long as the restrictions are 'viewpoint neutral' and 'reasonable in light of the purpose served by the forum,'" as these are. *Bynum v. U.S. Capitol Police Bd.,* 93 F. Supp. 2d 50, 56 (D.D.C. 2000) (citing *Cornelius*, 473 U.S. at 806 ). The limitations inherent in the crime of conviction, moreover, render the possibility of any such prosecutions marginal at best, and any such case could be the subject of an as-applied challenge.  Nothing at all calls for the "strong medicine," *Los Angeles Police Dep't*, 528 U.S. at 39 (internal quotation marks omitted), of overbreadth invalidation.

Seitz's counterarguments lack merit. First, he relies (Mot. 4-6) on *Bynum v. U.S. Capitol Police Bd.*, where Judge Friedman ruled that a Capitol Police regulation interpreting Section 5104(e)(2)(G)[2] that defined "demonstration activity" to include "holding vigils" and "sit-ins" swept too broadly because it "invited the Capitol Police to restrict behavior that is no way disruptive." 93 F. Supp. 2d at 53, 57. As an initial matter, *Bynum*'s invalidation of a Capitol Police regulation—which was applied to an individual who was denied permission to pray inside the Capitol building—does not inform the statutory challenge that Seitz presses here.[3] As noted above, Judge Friedman determined that Section 5104(e)(2)(G) was a reasonable, viewpoint neutral restriction in a nonpublic forum. *Id.* at 56. Specifically, he reasoned that, although the regulation went too far, Section 5104(e)(2)(G) itself set forth "legitimate purposes," *id.* at 57, that were "aimed at controlling only such conduct that would disrupt the orderly business of Congress—not activities such as quiet praying, accompanied by bowed heads and folded hands," *id.* at 58.[4] In short, Judge Friedman concluded that, unlike the regulation at issue in *Bynum*, the statute itself was not "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted).

Seitz's reliance (Mot. 6-7) on *Lederman v. United States*, 89 F. Supp. 2d 29 (D.D.C. 2000), is also unavailing. Like *Bynum*, *Lederman* involved a challenge to a Capitol Police regulation,

---

[2]     At the time, the provision was Section 193(f)(b)(7).

[3]     Similarly inapposite here is Seitz's invocation (Mot. 6) of a current Capitol Police regulation. Seitz does not—and could not—challenge that regulation in this case.

[4]     Seitz suggests (Mot. 6-7) that the legislative debate over what became Section 5104(e)(2)(G) undercuts Judge Friedman's interpretation that the statute was designed to prevent conduct that disrupted congressional business. Even putting aside the limited value of legislative history (*see infra* at p. 8) on this point, Seitz confuses congressional debate about whether to add an additional intent requirement to the existing "willfully and knowingly" scienter in the statute with the actus-reus question—what type of conduct does "demonstrate" in Section 5104(e)(2)(G) encompass—at issue in *Bynum*.

8

and is of marginal, if any, relevance for that reason. Furthermore, the regulation at issue there limited the areas within the Capitol *Grounds* in which individuals could engage in "demonstration activity," which in *Lederman* involved the distribution of leaflets in support of the arts. *Id.* at 32. Relying in part on *Jeanette Rankin Brigade*, *supra*, Judge Roberts in *Lederman* concluded that the entire Capitol Grounds constitute a traditional public forum, *id.* at 37, and that although the regulation left open alternative channels for expression, its imposition of a total ban burdened more speech than necessary. *Id.* at 38-39. The hypothetical "group of congressional staffers" whose conduct would violate the regulation (and who Seitz cites (Mot. 6-7)) "stood outside the Capitol," and thus "within a traditional public forum." *Id.* at 41. But Section 5104(e)(2)(G)'s prohibition applies only within the nonpublic forum inside the Capitol buildings, rendering the hypothetical inapt.

Finally, Seitz adverts at various points to statements during the House debate on the statute. But legislative history "is an uneven tool that cannot be used to contravene plain text." *United States v. Bingert*, 21-cr-91, 2022 WL 1659163, at *11 (May 25, 2022) (citing *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011)). The floor statements on which Seitz relies are "particularly 'unreliable.'" *United States v. Powell*, 21-cr-179, ECF No. 73, at 6 (D.D.C. July 8, 2022) (citing *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 474 (1921)). For example, in at least one instance, Seitz's citation to the legislative history is misleading. He accurately quotes (Mot. 3) Representative O'Neal's statement that O'Neal is "a little bit disturbed" about the language of the predecessor to Section 5104(e)(2)(G), but omits the later discussion in which O'Neal makes clear that the basis for his concern was that the prohibition does not also include the Capitol Grounds.

*See* 113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. O'Neal) (asking if "anyone would have an objection to adding the word 'grounds' to the new language").[5]

### II. Section 5104(e)(2)(G) is not constitutionally vague.

Seitz next contends (Mot. 7-11) that Section 5104(e)(2)(G) is "unconstitutionally vague on its face." *Id.* at 7.[6] That contention is flawed.

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV. An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)). To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion"

---

[5] Other representatives clarified that the law enacted in 1946 already included a similar prohibition that applied to the Capitol Grounds. *See* 113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. Colmer) (noting that such an addition "would be surplusage").

[6] Seitz thus asserts a facial vagueness challenge. As a general matter, one making such a facial vagueness challenge must demonstrate that the law is "impermissibly vague in all its applications"; one whose conduct is "clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Ests.*, 455 U.S. 489, 494-95 (1982). Seitz cannot surmount that demanding standard. Where the facial challenge relies on a First Amendment theory, a facial challenge may be available where the challenger shows that the law in question "reaches a substantial amount of constitutionally protected conduct." *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997) (citing *Kolender v. Lawson*, 461 U.S. 352, 359 n.8 (1983)). Even assuming that is a viable theory under governing law, *see Quigley v. Giblin*, 569 F.3d 449, 457-58 (D.C. Cir. 2009) (questioning the breadth of "First Amendment vagueness doctrine"), Seitz's facial vagueness claim fails for the same reasons that his overbreadth challenge falls short.

in the government "to determine whether the suspect has [violated] the statute." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *Williams*, 553 U.S. at 306, or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'" *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam)). Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). "As a general matter," however, a law is not constitutionally vague where it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

Seitz fails to overcome the strong presumption that Section 5104(e)(2)(G) passes constitutional muster. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language."). Section 5104(e)(2)(G) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or "indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S. at 306, nor does it require application of a legal standard to an "idealized ordinary case of the crime," *Johnson*, 576 U.S. at 604. The statute requires that a defendant, acting willfully and knowingly, parades, pickets, or demonstrates—in short, engages in disruptive conduct—inside the Capitol building. *See Bynum*, 93 F. Supp. 2d at 57-58 (explaining that Capitol Police regulation at issue in that case was unnecessary because Congress had provided "more than sufficient guidance" in Section 5104(e)(2)(G)'s statutory text). It gives rise to "no such indeterminacy." *Williams,* 553 U.S. at 306. While "it may be difficult in some cases to determine whether these clear requirements have been met," "'courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.'" *Id.* (quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950)).[7]

In an opinion following a recent trial, Judge Kollar-Kotelly explained some of the statute's operative terms, with no apparent difficulty:

> First, "to 'parade' means to take part in "[a] march or procession, organized on a grand scale, in support of some political object." "Parade," *Oxford English Dictionary* (2nd ed. 1989); *see also* "Parade," *Merriam-Webster.com Dictionary*

---

[7] For the reasons given above, *see supra* note 4, Seitz's reliance on scattered comments during the floor debate in the House does not counsel a different outcome.

12

> (June 16, 2022) ("to march in or as if in a procession"). Similarly, to "demonstrate" means to take part in "[a] public manifestation, by a number of persons, of interest in some public question, or sympathy with some political or other cause; usually taking the form of a procession and mass-meeting." "Demonstration," *Oxford English Dictionary* (2nd ed. 1989); *see also* "Demonstration," *Merriam-Webster.com Dictionary* (June 16, 2022) (to take part in "a public display of group feelings toward a person or cause," e.g., "peaceful *demonstrations* against the government" (emphasis original)).

Findings of Fact and Conclusions of Law, *United States v. Rivera*, No. 21-cr-60 (CKK), ECF No. 62, at 15 (D.D.C. June 17, 2022). Section 5104(e)(2)(G)'s operative terms are readily construed and comprehensible. The statute is neither "so vague that it fails to give ordinary people fair notice of the conduct it punishes" nor "so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595.

### III. Count Five states an offense.

Finally, Seitz argues (Mot. 11-12) that Count Five fails to state an offense. That argument fails.

A charging document is sufficient under the Constitution and Federal Rule of Criminal Procedure 7 if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished by "echo[ing] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). And a charging document need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

13

Count Five's allegations "clear[] th[e] low bar," *see United States v. Sargent*, No. 21-cr-258, 2022 WL 1124817, at *1 (D.D.C. Apr. 14, 2022) (Hogan, J.), to sufficiently plead a violation of Section 5104(e)(2)(G). First, Count Five includes the elements of Section 5104(e)(2)(G): it alleges that Seitz engaged in the prohibited conduct (parading, demonstrating, and picketing in a Capitol Building) and did so with the requisite mental state (willfully and knowingly). Count Five further alleges that the offense was committed on or about a specific date (January 6, 2021), and that the offense was committed in a specific district (the District of Columbia).

Although some cases involve a crime "that must be charged with greater specificity," *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007), this is not one of them. The paradigmatic example comes from *Russell v. United States*, 369 U.S. 759 (1962), where the defendant was charged under a statute that makes it a crime for a witness called before a congressional committee to refuse to answer any question "pertinent to the question under inquiry." 2 U.S.C. § 192. The indictment's failure in *Russell* to identify the subject of the congressional hearing rendered it insufficient because "guilt" under that statute "depend[ed] so crucially upon such a specific identification of fact." *Russell*, 369 U.S. at 764. That feature is not present here because guilt under Section 5104(e)(2)(G)—or under any of the other charges that the defendant here faces—does not depend on any such "specific identification of fact." *See Resendiz-Ponce*, 549 U.S. at 110 (not applying *Russell* to the illegal re-entry statute at issue in that case because guilt did not turn upon "a specific identification of fact"); *Williamson*, 903 F.3d at 131 (not applying *Russell* to statute criminalizing threats against federal officers); *see also United States v. Apodaca*, 275 F. Supp. 3d 123, 153 n.17, 154-56 (D.D.C. 2017) (not applying *Russell* to statute criminalizing use of firearms in connection with drug trafficking crimes).

Rather than dispute this straightforward analysis, Seitz (Mot. 12) contends that Section 5104(e)(2)(G) contains "numerous possible readings," at least some of which implicate protected First Amendment activity. That contention is flawed for the reasons given above, but in any event, is not relevant to determine whether Count Five satisfies the standard set out in Rule 7. Nor is the rule of lenity, which Seitz also (*id.*) invokes. Simply put, Count Five provides a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Nothing else is needed.

## **CONCLUSION**

WHEREFORE, the Government respectfully requests that the Court deny Seitz's motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Alexis J. Loeb
Alexis J. Loeb
CA Bar No. 269895
Assistant United States Attorney
Detailed to the D.C. United States Attorney's Office
450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
(415) 436-7168
alexis.loeb@usdoj.gov

By: /s/ James I. Pearce
James I. Pearce
N.C. Bar No. 44691
Appellate Counsel, Capitol Siege Section
United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
James.Pearce@usdoj.gov

15