```
 1                    BEFORE THE UNITED STATES DISTRICT COURT
                          FOR THE DISTRICT OF COLUMBIA
 2

 3    UNITED STATES OF AMERICA,         .
                                        .  Case Number 21-cr-279
 4              Plaintiff,              .
                                        .
 5         vs.                          .
                                        .
 6    ETHAN SEITZ,                      .  August 17, 2022
                                        .  1:19 p.m.
 7              Defendant.              .
      - - - - - - - - - - - - - - - - -

 8

 9                     TRANSCRIPT OF MOTION HEARING
                 BEFORE THE HONORABLE DABNEY L. FRIEDRICH
10                    UNITED STATES DISTRICT JUDGE

11    APPEARANCES:

12    For the United States:        ALEXIS LOEB, AUSA
                                    U.S. Attorney's Office
13                                  450 Golden Gate Avenue
                                    11th Floor
14                                  San Francisco, California 94102

15                                  JAMES PEARCE, AUSA
                                    U.S. Department of Justice
16                                  950 Pennsylvania Ave Northwest
                                    Suite 1250
17                                  Washington, D.C. 20530

18    For the Defendant:           JOSE GERMAN, AFPD
                                    Federal Public Defender's Office
19                                  625 Indiana Avenue Northwest
                                    Suite 550
20                                  Washington, D.C. 20004

21    Official Court Reporter:     SARA A. WICK, RPR, CRR
                                    United States District Court
22                                    for the District of Columbia
                                    333 Constitution Avenue Northwest
23                                  Room 4704-B
                                    Washington, D.C. 20001
24                                  202-354-3284

25    Proceedings recorded by stenotype shorthand.
      Transcript produced by computer-aided transcription.
```

P R O C E E D I N G S

(All participants present via video conference.)

COURTROOM DEPUTY:  Your Honor, we are in Criminal Action 21-279, United States of America versus Ethan Seitz.

If I can have the parties identify themselves for the record, starting with the United States.

MS. LOEB:  Good afternoon, Your Honor.  Alexis Loeb and James Pearce for the government.

THE COURT:  Good afternoon.

MR. GERMAN:  Good afternoon, Your Honor.  Jose German on behalf of Mr. Seitz.

THE COURT:  Good afternoon, Mr. German and Mr. Seitz.

So I have before me right now Mr. Seitz's motion to dismiss Counts 1, 2, 3, and 5 of the indictment and a motion to transfer venue.  I've reviewed the motions.  I'm prepared to rule, but I want to give both sides an opportunity to make any additional arguments or emphasize anything that you were hoping to today.

So let me start with Mr. German.

MR. GERMAN:  Thank you, Your Honor.

We, of course, understand that these motions have been, you know, raised in a number of cases, including cases before Your Honor.  At the same time, as I'm sure the Court understands, we have an obligation to Mr. Seitz to preserve these issues.  But again, of course, we understand there have been several rulings on these matters.

1    With that being said, Your Honor, we would rest on the

2    papers.

3          THE COURT:  All right.  Mr. Pearce or Ms. Loeb, any

4    additional argument you would like to make?

5          MS. LOEB:  Your Honor, I just wanted to apologize.

6    There was a typo in our opposition to the motion to dismiss the

7    obstruction charge that suggested that Mr. Seitz was in the

8    Capitol for zero minutes.  He exited the Capitol at 2:55 p.m.,

9    not 2:25 p.m.  He was inside for about 30 minutes.

10   Other than that, we would rest on the papers, Your Honor,

11   unless Mr. Pearce has anything to add.

12         THE COURT:  Mr. Pearce?

13         MR. PEARCE:  No, Your Honor, nothing to add from me.

14   Thank you.

15         THE COURT:  Okay.  So I will give my ruling here.  It

16   will take a little while.  But before I get to that, are you all

17   in a position now -- I am going to, by the way, deny the

18   motions.  Are we in a position to set a date for trial,

19   Mr. German?

20         MR. GERMAN:  I think, Your Honor, we would -- this is

21   a complicated issue for us.  I think we would want to maybe have

22   a little bit more discussion with the government about any

23   potential resolution to this case.  Of course, I understand the

24   Court wanting to move things along.  So I don't suggest a long

25   status date.  We could set a short date and then come back and

set a trial date.

THE COURT:  Okay.  Are there discovery issues or other issues that you're going to need me to address today?

MR. GERMAN:  I don't believe so, Your Honor.

THE COURT:  Okay.  All right.  Well, here's my ruling, and this will be my ruling other than a brief order that I will put out just saying that I've denied the motion.  So you shouldn't expect a forthcoming written opinion as well.

Mr. Seitz has moved to dismiss Count 1, the obstruction charge.  He argues that it fails to state an offense, as Congress's certification of the electoral results did not constitute an official proceeding and his alleged conduct did not obstruct, influence, or impede the proceeding within the meaning of the statute.  Further, he argues the statute is unconstitutionally vague.

The Court has already addressed and rejected most of Mr. Seitz's arguments in *U.S. v. Sandlin*, 575 F.Supp.3d 16 and in *United States v. Reffitt*.  That's 2022 WL 1404247.  The Court will briefly reiterate its earlier conclusions and address any new arguments made by Mr. Seitz.

First, Congress's Joint Session constitutes an official proceeding as defined in Title 18 United States Code Section 1515(a)(1), as it has the trappings of a formal hearing before an official body.  *Sandlin* at 23.

Like Mr. Sandlin and Mr. Reffitt, Mr. Seitz claims that an

official proceeding must relate to the administration of
justice.  But as the Court has explained, other provisions of
Chapter 73 show that the Court cannot read the extra requirement
into the definition of Section 1515(a)(1)(C).  That's *Sandlin* at
24.  Thus, it does not matter that Congress did not subpoena
witnesses or documents or exercise adjudicative power during the
joint session, as an official proceeding need not be
adjudicative or akin to a tribunal proceeding.  See *U.S. v.*
*Williams*, 2022 WL 2237301 at 9.  That's a Berman Jackson
opinion.

Mr. Seitz emphasizes the supposedly ceremonial and
ministerial nature of the Joint Session, but that too does not
matter.  Congress's electoral count authority surely is limited,
see Title III U.S.C. Section 15, but this does not change the
fact that the electoral count is a constitutionally and
statutorily mandated formal convocation of a Joint Session of
Congress for the purpose of conducting the official
constitutionally assigned business of certifying the electoral
vote.  That's *U.S. v. Andries*, 2022 WL 768684 at 6, a Contreras
opinion.

Mr. Seitz relies heavily on Judge McFadden's decision in
*U.S. v. Guertin*, which is 2022 WL 203467, which held that a
background investigation and security clearance adjudication by
the U.S. Department of State did not qualify as a proceeding
before a federal government agency under Section 1515(a)(1)(A)

because it bore scant resemblance to a formal tribunal.  That's *Guertin* at 6 through 7.  But Judge McFadden held in an order in *U.S. v. McCaughey*, 21-cr-40 at Docket 388, that *Guertin* offered no interpretation on the meaning of a proceeding before the Congress.  That's at 2, Note 1.  Plus, the process at issue in *Guertin* involved a single low-level bureaucrat issuing a routine certification rather than an official body.  That's *Guertin* at 8.  Congress's Joint Session is a far cry from that description.

Accordingly, the Court will adhere to its earlier decisions that Congress's Joint Session is an official proceeding under the statute.

Next, Mr. Seitz adopts Judge Nichols's position that Section 1512(c)(2) requires a defendant to have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence an official proceeding.  That is the defense motion quoting *Miller*, 2022 WL 823070 at 15.  This Court rejected that interpretation in *Reffitt*.  That's at 7 through 10.

And Mr. Seitz does not offer any new arguments here.  His extensive legislative history arguments are unpersuasive.  That Congress passed the Sarbanes-Oxley Act due to concerns about document destruction and the integrity of investigations of corporate criminality does not define the statute's scope.  *Sandlin* at 29.

Accordingly, that Mr. Seitz is not alleged to have taken

1    any action with respect to an object does not provide, in my

2    view, a basis for dismissing Count 1.

3         Finally, the Court continues to disagree that the term

4    "corruptly" renders the statute unconstitutionally vague.

5    Mr. Seitz relies on *U.S. v. Poindexter*, which held that

6    "corruptly" was unconstitutionally vague as applied to the

7    defendant's conduct of lying to Congress.  That's 951 F.2d at

8    386.  This Court explained in *Sandlin* that *Poindexter* has been

9    cabined to its facts and does not show that "corruptly" in

10   Section 1512(c)(2) is unconstitutionally vague, either facially

11   or as applied.  That is *Sandlin* at 30 through 35.  This Court

12   held that "corruptly" covered at least those defendants who

13   engaged in independently criminal and inherently maligned

14   conduct with the intent to obstruct an official proceeding.

15   That's *Sandlin* at 33.

16        Thus, to the extent Mr. Seitz raises a facial challenge, it

17   fails, as the statute specifies core behavior to which it

18   constitutionally applies, though there may be scenarios at the

19   edges that present vagueness problems.  That's *Sandlin* at 30,

20   quoting *Poindexter* at 385.

21        Mr. Seitz notes that judges in this district have provided

22   slightly different formulations of the meaning of the term

23   "corruptly."  I'm not going to cite all those cases, but

24   reviewing them, I find the definitions are fairly similar.

25   Plus, multiple judges in this district have provided near

identical definitions of "corruptly" in jury instructions for the January 6 trials.  In addition to *Reffitt*, I would cite *Robertson*, *Thompson*, *Hale-Cusanelli*, and *Williams*.

To the extent that Mr. Seitz raises an as-applied challenge, that also fails.  As was the case in *Reffitt*, it's not clear from the face of the indictment whether Mr. Seitz acted corruptly under its core meaning, and the Court, therefore, cannot determine whether he was sufficiently on notice that his conduct was criminal.  See *Reffitt* order at 5.

And Mr. Seitz does not challenge the factual sufficiency of this count in his motion.  Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.  That's *U.S. v. Pope*, 613 F.3d at 1259.

The Court will accordingly deny his motion to dismiss on this ground as premature.  Once the facts emerge at trial, the Court can address any as-applied vagueness challenge.

The government will have to prove, as it did in *Reffitt*, that Mr. Seitz used unlawful means or acted with an unlawful purpose and acted with consciousness of wrongdoing.  That's *Reffitt* at 4.

Finally, for the reasons stated in both *Sandlin* and *Reffitt*, the Court finds the rule of lenity inapplicable here.  The Court, therefore, denies Mr. Seitz's motion to dismiss Count

1.

With respect to Counts 2 and 3, the restricted building and grounds counts, these prohibit the unlawful entry into and disruptive or disorderly conduct in a restricted building or grounds.  A restricted building or grounds is a posted, cordoned off, or otherwise restricted area where the president or other person protected by the Secret Service is or will be temporarily visiting.  That's 18 U.S.C. Section 1752(c)(1)(B).  "Other person protected by the Secret Service" means any person whom the U.S. Secret Service is authorized to protect under the statute or by presidential memorandum.  That's 1752(c)(2).

The indictment alleges that Vice President Pence was the Secret Service protectee at the Capitol on January 6, 2021. Mr. Seitz argues that Vice President Pence could not have been temporarily visiting the Capitol on that day, but that argument has been rejected by numerous judges on this court already, and this Court agrees with those judges' conclusions.

Mr. Seitz first argues that Vice President Pence was not temporarily visiting the Capitol on January 6 because he was simply going to work, as the Constitution obligates the vice president to be physically present in the Senate with some frequency, pointing to the electoral certification and its tie-breaking votes.  That's the defendant's motion at 8.

"Temporarily" is defined as "for a time only, during a limited time."  That's the Oxford English Dictionary, Second

Edition, 1989.  And to "visit" is "to go see or sojourn at a place for a particular purpose, be it business, pleasure, or sightseeing."  That's Webster's Third New International Dictionary Unabridged, 1961.

After consulting these dictionaries, Judge Bates concluded that someone is temporarily visiting a location if they've gone there for a particular purpose, be it business, pleasure, or sightseeing, and for a limited time, which could be brief or extended while nonetheless remaining temporary.  That's *McHugh*, 2022 WL 296304 at 20.

Mr. Seitz claims that a person cannot temporarily visit a location where he regularly works and has an office, but as Judge Contreras explained in *Andries*, 2022 WL 768684 at 16, dictionary definitions of the term "temporary" do not impose such a limitation.  A person can certainly visit a location for the business purpose of working and meeting there.  Again, *Andries* at 16.

Plus, as Judge Nichols noted in denying a similar challenge, on January 6, the vice president presided over Congress's Joint Session which took place, at least in part, in the chamber of the House of Representatives and not in the Senate Chamber.  That's *U.S. v. Fischer*.  That's 21-cr-234, the May 3rd, 2022, transcript at 40.  And the vice president constitutionally only has a role as it relates to the Senate. Same cite.

1     Thus, even assuming a person cannot temporarily visit his

2     regular office, the government can still prove the vice

3     president temporarily visited the Capitol on January 6, 2021.

4     That's *Fischer* at 41, *Fischer* transcript.

5     Finally, the Court disagrees that the *McHugh* Court's

6     definition creates ambiguity and fair notice problems as it

7     would allow the statute's reach to expand and contract based on

8     fluid, unidentified factors:  The frequency with which the vice

9     president casts a tie-breaking vote, their personal preference

10    for working in their Senate office, and travel schedule,

11    et cetera.  The defendant's motion to dismiss at 11 to 14.

12    Those factors become irrelevant as the Court finds, as it has,

13    that a person can temporarily visit a regular workplace.  The

14    term "temporarily visit" is clear and definable, and the statute

15    at issue is not one that specifies no conduct at all.  *U.S. v.*

16    *Bronstein*, 849 F.3d at 1107.

17    Because the Court does not find the statute ambiguous, it

18    need not apply the rules of lenity or constitutional avoidance.

19    The Court will deny Mr. Seitz's motion to dismiss Counts 2 and

20    3.

21    With respect to Count 5, Mr. Seitz is charged with

22    violating 40 U.S.C. Section 5104(e)(2)(G), which prohibits

23    willfully and knowingly parading, demonstrating, or picketing in

24    any of the Capitol buildings.  He mounts a facial challenge to

25    the statute, arguing that it's substantially overbroad and

unconstitutionally vague.

First, the Court disagrees that the statute is substantially overbroad.  A statute is facially invalid if it prohibits a substantial amount of protected speech relative to the statute's plainly legitimate sweep.  *U.S. v. Williams*, 553 U.S. at 292 to 293.

The first step in overbreadth analysis is to construe the challenged statute.  *Williams* at 293.  The second step is to determine whether the statute, once construed, criminalizes a substantial amount of protected expressive activity.  That's *Williams* at 297.

Because the wide-ranging effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, the Supreme Court emphasizes that the overbreadth doctrine is strong medicine and has employed it with hesitation and then only as a last resort.  *New York v. Ferber*, 458 U.S. at 769.

The Court will construe the statute.  To "parade" is "to march in procession or with great display or ostentation, to walk up and down or promenade in a public place especially for the sake of showing off."  That's the Oxford English Dictionary defining "parade," Second Edition, 1989.

To "demonstrate" is "to make or take part in a public demonstration."  That's the Oxford English Dictionary, Second Edition, 1989.  And in turn, "demonstration" is "a public

manifestation by a number of persons of interest in some public
question, or sympathy with some political or other cause,
usually taking the form of a procession and mass meeting."
That's again the Oxford English Dictionary, Second Edition,
1989.

Finally, to "picket" is "to act as a picket in a dispute or
demonstration."  That's the Oxford English Dictionary, Third
Edition, 2006.  And a "picketer" is "one engaged in a
demonstration at a particular premises."  That's Oxford English
Dictionary, Second Edition, 1989.

Even if these words were susceptible of multiple and
wide-ranging meanings, which they are not, their meanings are
clarified by employing the noscitur canon, which counsels that a
word is given more precise content by the neighboring words with
which it's associated.  *Williams*, 553 U.S. at 294.  Taking these
words together, the statute covers those who noticeably take
part in a public display, likely with multiple people and in
support of some dispute or cause, in any of the Capitol
buildings.

This is further informed by the surrounding provisions in
Section 5104(e)(2), which prohibit, for instance, uttering loud,
threatening, or abusive language, or engaging in disorderly or
disruptive conduct, obstructing or impeding passage, and
engaging in an act of physical violence in the Capitol buildings
or grounds.  That's Sections 5104(e)(2)(D) through (F).

Thus, Judge Friedman has explained that the prohibition in Section 5104(e)(2)(G) appears aimed at controlling only such conduct that would disrupt the orderly business of Congress, not activities such as quiet praying accompanied by bowed heads and folded hands. *Bynum*, 93 F.Supp.2d 50 at 58.

Further, a person violates the statute only if he does so knowingly and willfully. Accordingly, inadvertent just demonstrating is not covered here.

Having construed the statute, the Court now turns to whether this covers a substantial amount of protected expressive activity. It does not. Judge Friedman in the case mentioned, *Bynum*, held that the Capitol buildings are nonpublic fora such that the government may restrict First Amendment activity in the Capitol so long as the restrictions are viewpoint neutral and reasonable in light of the purpose served by the forum. *Bynum* at 56. And he found that the statute was viewpoint neutral and a reasonable regulation of both conduct and expressive activity. Same cite.

This Court agrees. The statute does not discriminate based on the message of the demonstration, and by targeting noticeable public displays of multiple people, it is reasonably calculated to protect the orderly function of Congress. Even if some protected activities could be covered, they do not substantially outnumber the unprotected activities within the statute's scope. Besides, the mere fact that one can conceive of some

impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge. *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. at 800.

Mr. Seitz does not point to any actual instances of prosecution under Section 5104(e)(2)(G) based on protective speech. Rather, he argues that the subsection is not limited to disruptive speech, protests, gatherings, or even audible oral expression of ideas. That's his motion at 3. But he can point to only stray comments from lawmakers, which are among the least illuminating forms of legislative history. *Advocacy Healthcare Network v. Stapleton*, 137 S. Ct. 1652 at 1661, and Capitol Police regulations and guidelines, some outdated, do not shed light on the statute enacted by Congress. He also cites cases invalidating bans on all assemblies in public fora like the Capitol grounds. See *Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F.Supp. at 583 through 585. But they're inapposite in the context of a nonpublic forum. "Capitol buildings" as defined in 40 U.S.C. Section 5104 do not include the Capitol grounds. The Court, therefore, finds no reason to depart from its conclusion that the statute is not substantially overbroad.

Turning to Mr. Seitz's vagueness challenge, the law is vague when it fails to give ordinary people fair notice of the conduct it punishes or is so standardless that it invites arbitrary enforcement. *Johnson v. United States*, 576 U.S. at

595.   The touchtone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal. *U.S. v. Lanier*, 520 U.S. at 267.  This is a stringent standard, as a void-for-vagueness challenge is unavailing when posed to a statute that merely requires a person to conform his conduct to an imprecise but comprehensive normative standard whose satisfaction may vary depending upon whom you ask. *U.S. v. Harmon*, 2021 WL 1518344 at 4.  Rather, the statute must specify no standard of conduct at all. *Bronstein*, 849 F.3d at 1107.

Ordinarily, a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others, but the Supreme Court has relaxed this requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it's unclear whether it regulates a substantial amount of protected speech. *Williams*, 553 U.S. at 304.

Section 5104(e)(2)(G) is not unconstitutionally vague.  It does not condition liability on a subjective judgment such as whether conduct is annoying or indecent. *Williams* 553 U.S. at 306.  As explained, the statutory terms are clearly understood not to regulate a substantial amount of protected speech, and they do not provide law enforcement officials with virtually unfettered discretion, *Williams* at 307, leading to the risk of arbitrary enforcement, as the defendant has argued.

1    Mr. Seitz's reliance on legislative history again is

2    unhelpful, as it does not alter the Court's interpretation of

3    clear statutory text, nor is the statute vague because Mr. Seitz

4    believes that children singing "we love our Capitol Police"

5    while on a field trip could be covered under the statute.

6    That's the defendant's motion to dismiss at 8.  In fact, they

7    would not be, as the statute has scienter requirements.

8    Mr. Seitz's void-for-vagueness challenge thus fails.

9    Finally, Mr. Seitz challenges the factual sufficiency of

10   this count of the indictment.  Count 5 states, "On or about

11   January 6, 2021, within the District of Columbia, Ethan C. Seitz

12   willfully and knowingly paraded, demonstrated, and picketed in

13   any United States Capitol building."  That's Docket 8.  This

14   suffices to state an offense.  The indictment need only contain

15   a plain, concise, and definite written statement of the

16   essential facts constituting the offense charged.  That's

17   Federal Rule of Criminal Procedure 7(c)(1).  And it is

18   sufficient if it clearly informs the defendant of the precise

19   offense of which he is accused so that he may prepare his

20   defense.  *U.S. v. Conlon*, 628 F.3d at 155.  It's enough for the

21   indictment to use the statutory language and specify the time

22   and place of the offense, *U.S. v. Williamson*, 903 F.3d at 130

23   through 131, as long as the statutory terms themselves fully,

24   directly, and expressly, without any uncertainty or ambiguity,

25   set forth all the elements necessary to constitute the offense

intended to be punished.  *Hamling*, 418 U.S. at 117.  See also *Conlon*, 628 F.2d at 156.

Mr. Seitz's indictment tracks the language of Section 5104(e)(2)(G) and tells him when and where he committed the offense.  That is adequate to put him on notice of the charge against him.  No factual allegations are required when the statutory language itself allows the defendant to prepare a defense to the charge.  See *U.S. v. Sargent*, 2022 WL 1124817 at 3.  In that case Judge Hogan rejected a challenge to the indictment for a civil disorder charge, finding that the indictment did not need to specify how the defendant obstructed, impeded, or interfered with a law enforcement officer.  It was enough that the indictment tracked the plea or statutory terms.  The same holds true for these terms, paraded, demonstrated, or picketing.

To be sure, there are some crimes that must be charged with greater specificity.  *Hamling v. United States*, 418 U.S. at 117.  For instance, where a statute criminalizes the refusal of a witness summoned before a congressional committee to answer any question pertinent to the subject under inquiry, a valid indictment must go beyond the words of Section 192 and allege the subject of the congressional hearing in order to determine whether the witness's refusal was pertinent.  *U.S. v. Resendiz-Ponce*, 549 U.S. at 109, citing *Russell*, 369 U.S. 749.  *Russell* explained that the very core of criminality under the

statute is pertinency to the question under inquiry, so the
matter under inquiry is central to every prosecution under the
statute.  369 U.S. at 764.

But guilt under Section 5104(e)(2)(G) does not similarly
depend so crucially upon such a specific identification of fact.
*Russell,* 369 U.S. at 764.  The government must prove only that
Mr. Seitz paraded, demonstrated, or picketed in a Capitol
building, which is exactly what the indictment alleges.  The
terms are clear and do not require further elaboration.
Therefore, the indictment need not explain the manner in which
Mr. Seitz paraded, picketed, or demonstrated.

The Court will thus deny his motion to dismiss Count 5, and
he could bring an as-applied challenge once the facts have been
established at trial.

Finally, the motion to transfer venue, Mr. Seitz moves for
a change of venue pursuant to Federal Rule of Criminal Procedure
Rule 21(a).  He argues that the Court must presume the prejudice
of the jury pool because of negative pretrial publicity and the
partisan characteristics of the District of Columbia.

This Court denied a similar motion in *Reffitt*, see
October 15, 2021, minute order and Calhoun, 21-cr-116, July 11,
2022, minute order, and it will do so here as well.

Under D.C. Circuit precedent, it's well-established
procedure to refuse pre-voir dire requests for a change of
venue.  *U.S. v. Haldeman*, 559 F.2d at 63 through 64.  If an

impartial jury actually cannot be selected, that fact should become evident at the voir dire.  Only in extreme circumstances may prejudice to the defendant's rights be presumed before voir dire.  Again, *Haldeman* at 60.  See also *Skilling v. U.S.*, 561 U.S. at 381.

Mr. Seitz has not demonstrated that extraordinary local prejudice will prevent a fair trial or that the jury pool in the District is presumptively biased against him.  First, the size and characteristics of the District do not support a presumption of prejudice.  As Judge Mehta noted, denying a similar motion, the District has a larger population than those in which the Court has found said transfer was constitutionally required and larger than population sizes that it has found reduce the likelihood of prejudice.  See *U.S. v. Rhodes*, 2022 WL 231554 at 21.  That's a case in which a murder was committed in a parish of only 150,000 residents.  *Irving v. Dowd*, 366 U.S. at 719, a murder was committed in that case in a county of only 30,000 inhabitants.  And *Gentile v. State Bar of Nevada*, 501 U.S. at 1044, finding a likelihood of prejudice reduced with a population in excess of 600,000 persons.

Nor does it matter that residents of the District voted in large numbers for President Biden, as the defense has argued. The D.C. Circuit has held in a case involving members of the presidential administration that a community's voting patterns are not pertinent to venue.  Again, *Haldeman,* 559 F.2d at 64,

1    Note 43.

2         It is also irrelevant that many District residents are

3    federal government employees.  See *U.S. v. Bochene*, 2022 WL

4    123893 at 2.  That's a January 6 case in which a defendant

5    claimed that federal employees would have a vested interest in

6    supporting their employer, and that was rejected.

7         Further, courts have not found that transfer is required in

8    cases where members of the community were victimized by the

9    defendant's actions.  See, for example, *In re Tsarnaev*, 780 F.3d

10   at 15, that's the Boston Marathon bombing case, and *Skilling*,

11   561 U.S. at 399, Enron collapse.  Here, the events of January 6

12   took place well over a year before Mr. Seitz will proceed to

13   trial.

14        Next, neither the pretrial publicity nor its proximity to

15   trial support a presumption of prejudice.  Mr. Seitz points to

16   publicity that does not focus specifically on him and is mostly

17   national in scope.  This news coverage, even when it includes

18   statements from D.C.-based figures, has thus largely been

19   consumed by national audiences, not just the D.C. jury pool.

20   See *U.S. v. Caldwell*, 21-cr-28 at 11, Docket 415.  Though the

21   statements contain harsh language about January 6 participants,

22   they do not contain any public confession or any blatantly

23   prejudicial information about Seitz of the type readers or

24   viewers could not reasonably be expected to shut from sight.

25   *Skilling*, 561 U.S. at 382.  Besides, it is not enough that some

of the news coverage may be hostile in tone and accusatory in context. *Haldeman,* 559 F.2d at 62.

It is true that there's been continuing coverage of the January 6 events with the hearings and the trials, but the fact that there have been ongoing media coverage of the breach and the Capitol and subsequent prosecutions, both locally and nationally, means that the influence of the coverage would be present wherever trial is held. *Bochene*, 2022 WL 123893 at 3, quoting *Tsarnaev* at 22. For instance, national and D.C. audiences alike are aware of the January 6 committee hearings and President Trump's second impeachment trial.

Mr. Seitz ignores that multiple other January 6 cases have successfully gone to jury trial where voir dire has not been a problem in identifying unbiased jurors. *Rhodes,* 2022 WL 231554 at 22. Indeed, this Court, during the *Reffitt* trial, was able to screen out biased jurors during a careful and searching voir dire process that did not take a long time.

Therefore, the Court will deny the motion to transfer venue as premature, and Mr. Seitz may renew the motion after voir dire.

All right. How do you suggest we proceed, Mr. German? Is it appropriate, in light of your desire to have continuing conversations with the government, to set this for a status hearing in a brief period of time and then at that point we can set a trial date, if necessary, or a date for disposition?

1          MR. GERMAN:  Yes, Your Honor, that would be our

2    preference.

3          THE COURT:  Okay.  So how much time do you need?

4          MR. GERMAN:  30, 45 days, Your Honor, if that works

5    for the Court.

6          THE COURT:  Sure.  How about some time the week of

7    September 19?  What is your schedule -- what do your schedules

8    look like that week?

9          MS. LOEB:  That works for the government, Your Honor.

10   The afternoon of September 20th, I have a sentencing, but other

11   than that, my week is pretty open.

12         THE COURT:  Okay.  Mr. German?

13         MR. GERMAN:  That looks pretty open for me as well,

14   Your Honor.  Just give me one second.

15         THE COURT:  Mr. Seitz, while he's looking, do you have

16   any conflicts that week, the 19th?

17         THE DEFENDANT:  No, just work.

18         THE COURT:  Is there a certain time of day that's

19   better for you from a work perspective?

20         THE DEFENDANT:  No.  I have some days off that week.

21   I sent Mr. German my schedule.

22         THE COURT:  Okay.  Let's try to pick one of those, if

23   we can.

24         MR. GERMAN:  Mr. Seitz, do you know off the top of

25   your head what day that week you're off?

1          THE DEFENDANT:  I can look real quick.

2          THE COURT:  And if for some reason, Mr. German, you do

3    reach some sort of resolution and you want to convert that into

4    a plea hearing, I would be open to that as well.  Obviously,

5    Mr. Seitz, you have the right to appear in person before the

6    Court for any plea or sentencing hearing.  So I would need to

7    make the appropriate findings to proceed by video under the

8    CARES Act.  But let's give enough time so if you want that

9    option we can do that.

10          MR. GERMAN:  Yes, Your Honor.

11          THE DEFENDANT:  I have the 21st and the 22nd off that

12   week.

13          THE COURT:  All right.  Either of those days work for

14   me.  Mr. German, do you have a preference?

15          MR. GERMAN:  Can we do the 21st, Your Honor?

16          THE COURT:  Sure.

17          MR. GERMAN:  10:00 is fine, Your Honor.

18          MS. LOEB:  Your Honor, apologies.  Since I'm in

19   California, would it be possible to do 11:00 or later?

20          THE COURT:  You don't want to wake up at 5:00 in the

21   morning for this?

22          MS. LOEB:  The problem may be small children who also

23   wake up at 5:00 in the morning for this.

24          THE COURT:  Of course.  I'm happy to do that.  What

25   time would work for you?  We can do noon.

1          MS. LOEB:  Any time after 11:00.  So noon is fine.

2    Thank you.

3          THE COURT:  All right.  Let's do noon Eastern time,

4    9:00 Pacific.

5       Is there a motion to exclude time under the Speedy Trial

6    Act until that date?

7          MS. LOEB:  Yes, Your Honor.  I believe it would be in

8    the interest of justice to allow the parties time to explore a

9    possible pretrial resolution in this matter, and also, the

10    government continues to produce the global discovery that

11    applies across the Capitol riot cases.  So the exclusion would

12    give the defendant time to review the discovery to adequately

13    prepare.

14          THE COURT:  Okay.  Any objection, Mr. German?

15          MR. GERMAN:  No, Your Honor.

16          THE COURT:  All right.  So I will exclude time from

17    today until -- did we say September 21st?  Was that the date I

18    picked?

19          MS. LOEB:  Yes, Your Honor.

20          THE COURT:  September 21st of 2022, in calculating the

21    date for speedy trial.  I do find it's in the interest of

22    justice to exclude this time for the reasons stated, namely for

23    the parties to continue discussions about a possible pretrial

24    disposition and the defense to review any forthcoming discovery

25    and make decisions how best to defend this case.  So I will

1    exclude that time.

2         And I will see you back on the 21st.  All right?  Anything

3    else?  Are we all covered?

4              MS. LOEB:  Nothing else for the government.  Thank

5    you.

6              MR. GERMAN:  Nothing from us, Your Honor.  Thank you.

7              THE COURT:  All right.  Thank you.  See you back on

8    the 21st, Mr. Seitz.

9         (Proceedings adjourned at 1:56 p.m.)

1               CERTIFICATE OF OFFICIAL COURT REPORTER

2

3         I, Sara A. Wick, certify that the foregoing is a

4  correct transcript from the record of proceedings in the

5  above-entitled matter.

6

7         Please Note:  This hearing occurred during the

8  COVID-19 pandemic and is, therefore, subject to the

9  technological limitations of court reporting remotely.

10

11

12  /s/ Sara A. Wick            August 31, 2022

13  SIGNATURE OF COURT REPORTER      DATE

14

15

16

17

18

19

20

21

22

23

24

25