**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

**UNITED STATES OF AMERICA**

   **v.**

**ETHAN SEITZ,**

   **Defendant.**

</td><td>

**Case No. 21-cr-279 (DLF)**

</td></tr>
</table>

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

     The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Ethan Seitz to 21 months' incarceration, the midpoint of the applicable guidelines range, 36 months' supervised release, $2,000 in restitution, no fine, and a special assessment of $125, consisting of $100 for Count 1 and $25 for Count 3.

## I.      INTRODUCTION

     The defendant, Ethan Seitz, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9

Seitz, a thirty-four year old from Ohio, travelled to Washington, D.C. on January 5 to join what he called a "war between Good and Evil." Convinced that the 2020 presidential election had been stolen, Seitz attended former President Trump's rally on January 6, and then proceeded to march to the Capitol, even after learning that a "militia" intended to "take the building."  He entered the Capitol building through a broken window. He wrote on Facebook that he and other rioters "pushed and pushed" and went "where the cops didn't want people." He bragged about being on the front lines.   Later that evening, Seitz celebrated that he "did storm the fuckin capitol" and that "[t]he patriots in DC were [t]here to show WE THE PEOPLE will not allow our country to be stolen."

The government recommends that the Court sentence Seitz to 21 months of incarceration for his conviction of violating 18 U.S.C. § 1512(c)(2). A 21-month sentence reflects the gravity of Seitz's conduct, but also acknowledges his acceptance of responsibility.

## II.    FACTUAL BACKGROUND

### A.    The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, Doc. 1-1, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

### B.    Seitz's Role in the January 6, 2021 Attack on the Capitol

In the days leading up to January 6, 2021, Seitz texted family members and other contacts

---

million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

about his plan to travel to Washington, D.C. at the direction of former President Trump. Specifically, on January 1 at 5:28 p.m., Seitz texted Family Member 1 "I guess busses of Antifa are supposed to be arriving on the 5th. But I know the patriots will out number whatever they have. Trump personally has asked goes [sic], this to fight the election fraud!" At 6:15 p.m., he texted the same family member:

> Me and [third party] have had some lengthy conversations about everything. And we are both convinced there is a war going on. With the deep state. But also a war between Good and Evil. And we had a conversation about the possibilities of what could happen if things we think come true. And also putting on the armor of God and fighting. And regardless of what is happening I feel like this is my first time to really stand up. Even if nothing changes. We have high hopes that history will be made. I have high hopes in the grant awakening. But things could get way worse. And way fast. I take a stand now if only for the experience of it. Cause I'm a stand firm on the belief that the time is very quickly approaching when good men are gonna have to do bad things. Because that's war. And if nothing changes that's what its gonna be, more than it already is now.

A few minutes later, he continued: "There is so much big shit going on behind the scenes. But it's a real war going on. I promise."

On January 2, 2021, Seitz texted Family Member 2: "Just a heads up.. I'm leaving on the 5th and going to DC. I'll be back on the 7th. Pray hard that I have a safe and successful trip please." *Id.* That family warned Seitz that "You're gonna end up landing your ass in DC jail. And I won't know the first fucking clue on how to bail you out." Seitz responded, "Lol [laughing out loud] I dont think you need to worry about that." He continued: "If they would actually overturn the election for the fraud against Trump it's hard to say how things could go. I'll be surrounded by a million like minded patriots. You need to be here." And "I'm sorry [Family Member 2]. Beyond the point of the trip I've been dealing with some shit and this is something I have to do alone. It's a big step for me in independence. It's important. I've made my decision. Ok. Lol everything will

be fine. I'll be sure to call you and keep you updated as much as needed lol[.]"

Also on January 2, Seitz texted another contact, "I got a knife with a sheath. That goes on my waist.. It also has a fire starter thing on it. It's a survival knife."

Then on January 5, 2021 at 11:19 p.m., Seitz posted two photographs to Facebook and indicated that he was "In Washington DC with it. [bicep emoji, grinning emoji, American flag emoji]"



*Image 1 – Seitz's January 5, 2021 Facebook Post*

The next morning, Seitz attended the rally in support of former President Trump. In a

Facebook message, Seitz stated that while at the rally, he heard "militia" describing plans to "storm" the Capitol in order to "occupy the building and stop the procedural vote." He also wrote a Facebook message stating that the militia wanted to "storm the Capitol and take the building after Trumps speech."

Hoping to send a message to Congress and stop the certification of the Electoral College vote, Seitz decided to march to the Capitol too. In a series of Facebook messages, Seitz described his participation in the riot, often in real time. At 2:06 p.m., he wrote, "Cops blocking Capitol they just threw tear gas." At 2:25 p.m., Seitz wrote, "I'm goin in the capitol." Slightly less than two minutes later, Seitz entered the Capitol through a broken window next to the Senate Wing Door. *See* Images 2 and 3 (still shots of CCTV from the U.S. Capitol Police surveillance system at 2:25:42 pm and 2:26:23 pm on January 6, 2021). At 2:27 p.m., Seitz wrote on Facebook, "I just climbed in through a broken window" and texted a contact, "I stormed the building[.]"



*Image 2 – CCTV still shot from 2:25:42 p.m. with Seitz highlighted in a yellow circle*



*Image 3 - CCTV still shot from 2:26:23 p.m. with Seitz highlighted in a yellow circle*

After entering the building, Seitz attempted to direct other rioters towards the Senate Chamber, where the Electoral College proceedings were supposed to be taking place. *See* Images 4-7.



*Image 4 – CCTV still of Seitz, highlighted in a yellow box, gesturing towards the Senate Chamber*



*Image 5 – CCTV still of Seitz, highlighted in a yellow box, yelling and gesturing towards the Senate Chamber*



*Image 6 – CCTV still of Seitz, highlighted in a yellow box, yelling and gesturing towards the Senate Chamber*



*Image 7 – CCTV still of Seitz, highlighted in a yellow box, yelling and gesturing towards the Senate Chamber*

8

A few minutes later, Seitz is visible on Capitol CCTV inside the Rotunda. At one point, he lifts his hand and hat in the air, appearing to cheer. *See* Image 8.



*Image 8 – CCTV still of Seitz, highlighted in a yellow box, inside the Rotunda*

At about 2:42 p.m., he entered the area near the Rotunda Doors, shortly after they had been breached for the second time, where he stayed for about two minutes and then returned to the Rotunda.   From there, he moved into a hallway leading toward the Senate Chamber, where a group of rioters tried to push past police, who were forced to use pepper spray to hold back the mob.   A French journalist captured Seitz on video leaving this area and returning to the Rotunda:



*Image 9 – Still from approximately 53:09 in Exhibit 3, a French journalist's video showing rioters leaving hallway after police repelled advance toward the Senate with OC spray*

Seitz then returned downstairs. He exited the building through a smashed-out window near the Senate Wing Door around 2:55 p.m., roughly thirty minutes after he had entered.

Beginning at 3:03 p.m., Seitz sent a series of Facebook messages. First, he messaged a contact that he "was inside the capitol and was smashed in a group of people. They fuckin pepper sprayed us and hit us with tear gas canisters inside capitol building." He continued, "I had to climb out a window. I couldnt breathe. I need a fuckin gas mask[.]" A few minutes later, he messaged the same contact that he "didnt really prepare for that. I didnt expect to be on the frontline storming the capitol and taking the building lol[.]"

He also messaged Family Member 1, "I was inside upstairs in the capitol pushing with a group of people and they fuckin gassed us again. And pepper sprayed us[.]" Then, "I had to climb out a window. Couldnt breath or see. Then someone doused my eyes with water[.]"

He messaged a third individual, "I climbed through a broken window of the capitol. We pushed and pushed bro. I've been gassed 2 or 3 times. And pepper sprayed. I had to climb back

out I couldnt breath."

At 4:04 p.m., Seitz texted one of the previously mentioned contacts, "Stormed the capitol. They gassed us and pepper sprayed us. I was inside the capitol building."

By approximately 4:28 p.m., Seitz was among a group of rioters being pushed back by police outside the west side of the Capitol Building. While being pushed back by an officer, he grasped the officer's baton. *See* Images 10 and 11.



*Image 10 – Still from MPD BWC of Seitz grabbing an officer's baton*

11



*Image 11 – Still from MPD BWC of Seitz grabbing an officer's baton*

In an interview with a former radio host on the evening of January 6, Seitz stated he was part of a group that rushed in and "made it to the other side of the building" before encountering a door that the police had locked and barricaded. *See* Image 12. Once Seitz's group got enough people, he explained, "we pushed through and let the other side in." He said, "we're here because we care about the integrity of the election and Donald Trump won this election."



*Image 12 – Still from Exhibit 1 at timestamp 15:17; Seitz on camera with a former radio host*

Later that evening, Seitz sent multiple messages celebrating his participation in the riot. He texted one contact at 7:27 p.m., saying, "I stormed the capitol building[.]" In a Facebook message he wrote, "Lol well I'm safe. I guess its whatever. First time I ever came to DC and *I was right at the front of the charge* into the capitol 🤷 [shrugging emoji] seems fitting I suppose." (emphasis added). And he wrote in another message: "But *I did storm the fuckin capitol* and climb in through a window. Got gassed and pepper sprayed. Flash bombs thrown at me. And fuckin rubber bullets shot at me." (emphasis added). He also wrote:

> I've been looking at all the news stories about DC today. The narrative is absolutely ridiculous. From someone who was here all day AND inside the capitol building at the very beginning. I promise you.. the fake news is trying to make it out to be a whole other thing. So are the corrupt politicians. The media is reporting it as an attempted coup. *When the coup is already happening against Trump through a fraudulent election.* The patriots in DC were here to show WE THE PEOPLE will not allow our country to be stolen! #StopTheSteal #MarchForTrump[.]"

(emphasis added).

13

He messaged Family Member 1: "Oh yeah idgaf [I don't give a fuck] dude. I pay taxes. That's mine and every other tax paying americans building. The federal government is run by WE THE PEOPLE. I didnt break no laws. I didnt destroy anything or hurt any body. I didnt even steal anything. Which was really hard for me. Lol[.]"

And he told another contact, "once Trump is out of office [...] *Pile guns and wait for the war to start*[.]" (emphasis added).

Seitz was arrested on March 19, 2021. FBI interviewed him following his arrest. Consistent with his Facebook messages, Seitz said that, inside the Capitol, there was a group of people "pushing" and "going where the cops didn't want people," and recalled pepper spray being "in the air."   He agreed that the crowd's (and his) intent that day was to disrupt Congress.

### III.    THE CHARGES AND STIPULATED FACTS TRIAL

On April 2, 2021 a federal grand jury returned an indictment charging Seitz with five counts, including, Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), and Disorderly or Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2). *See* Doc. 8. On August 8, 2023, Seitz was convicted of those offenses as the result of a stipulated trial. *See* Docs. 61, 62, 63.

### IV.    STATUTORY PENALTIES

Seitz now faces sentencing on the two counts of conviction. As noted by the Presentence Report issued by the U.S. Probation Office, Seitz faces up to 20 years of imprisonment, a term of supervised release of not more than three years, a fine of $250,000 or twice the pecuniary gain or loss of the offense, restitution, and a mandatory special assessment of $100 on Count 1 of the Indictment. In addition, Seitz faces up to one year of imprisonment, a term of supervised release

of not more than one year, a fine of $100,000 restitution, and a mandatory special assessment of $25 on Count 3 of the Indictment.

## V.     THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). Here, with one exception, the government agrees with the calculations in the Presentence Investigation Report ("PSR").

Count One: 18 U.S.C. § 1512(c)(2)

| | | |
|---|---|---|
| U.S.S.G. § 2J1.2(a) | Base Offense Level | 14 |
| U.S.S.G. § 2J1.2(b)(2) | Resulted in Substantial Interference[2] | +3 |
| | **Total** | **17**[3] |

---

[2]  The term "substantial interference with the administration of justice" as defined in the commentary, "include[s] . . . the unnecessary expenditure of substantial governmental or court resources." *See* U.S.S.G. § 2J1.2(b)(2), Application Note 1. Seitz stipulated that he corruptly obstructed and impeded an official proceeding, namely the certification of the Electoral College vote count. The riot resulted in evacuations, vote count delays, officer injuries, and more than 2.9 million dollars in losses. As described herein, law enforcement from all over the D.C. metropolitan area responded to assist in protecting the Capitol from the rioters.

[3]  The PSR applies an additional enhancement for conduct that caused or threatened physical injury or property damage under U.S.S.G. § 2J1.2(b)(1)(B).   That enhancement applies if the "offense involved causing or threatening physical injury to a person, or property damage, in order to obstruct the administration of justice." *See generally United States v. Clark*, 21-cr-538 (DLF), Sent. Tr. 7 ("the Court … had held in other cases, including *U.S. v. Reffitt* – that's 21-cr-32 – that these enhancements do apply [] with respect to offenses like Mr. Clark's); *see also United States v. Reffitt*, 21-cr-32 (DLF), Gov't Sent. Memo, Doc. 158 at 29-34 (discussing application of U.S.S.G. § 2J1.2(b) adjustments). Although it is a close question, the government does not join Probation's recommendation to apply the enhancement here. Probation concluded that requirement was satisfied because "while inside the Capitol, [Seitz] and other rioters pushed against doors which had been locked and barricaded by police and forced their way" into the Capitol building and also "momentarily grasped [an] officer's baton." PSR ¶ 45.

The government recognizes that there is some support for the enhancement here, particularly given Seitz's admission that he "pushed" and the evidence that he was in the hallway near the Senate Chamber when rioters tried to breach the police line, but given the lack of specificity in the evidence currently available, declines to seek it in this case.

Count Three: 18 U.S.C. § 1752(a)(2)

| U.S.S.G. § 2A2.4(a) | Base Offense Level | 10 |
|---|---|---|
| U.S.S.G. § 2A2.4(b)(1)(A) | Physical Contact | +3 |
| | **Total** | **13** |

Counts One and Three are grouped for guideline calculation purposes because they involve the same victim, Congress, and the same acts or transaction. U.S.S.G. §3D1.2(b).

| **Combined Offense Level** | **17** |
|---|---|
| Acceptance of responsibility (U.S.S.G. §3E1.1) | -3 |
| **Total Adjusted Offense Level:** | **14** |

*See* PSR ¶¶ 37-54 (calculating a total offense level of 22 based on the additional application of the U.S.S.G. § 2J1.2(b)(1)(B) +8 enhancement).

The U.S. Probation Office calculated Seitz's criminal history as category II, which is not disputed. PSR ¶¶ 58-60. Accordingly, based on Seitz's total adjusted offense level, after acceptance of responsibility, at 14, Seitz's Guidelines imprisonment range is 18 to 24 months' imprisonment.

## VI.     SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a significant term of incarceration.

### A.     Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Seitz's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Seitz travelled to D.C. amid talk of "war" and once there, he did

not hesitate to "storm the Capitol" despite learning of such plans from a militia. He climbed through a broken window, attempted to direct other rioters towards the Senate Chamber, "pushed and pushed" inside the building, thwarted police efforts to contain the rioters by opening a locked door, and then resisted officers' attempts to remove him once outside.   That night, he celebrated and boasted about his conduct. The nature and circumstances of Seitz's offenses were of the utmost seriousness, and fully support the government's recommended sentence of 21 months incarceration.

### B.  Seitz's History and Characteristics

Seitz stands before the Court with a criminal history, including two convictions related to the impaired use or attempted use of a vehicle. In 2014, Seitz was convicted of impaired driving after Seitz slashed the tires of another vehicle in the parking lot of a bar and then attempted to drive away. *See* PSR ¶ 56. In 2018, he was convicted for drug possession after the police, having received a report that a man in a car was shooting something into his arm, stopped the car that Seitz was driving. The police found a long glass pipe, needles, a digital scale, and other drug paraphernalia within the vehicle. Seitz received a 30-day suspended sentence and 36 months' probation, which expired in November 2021.

These offenses indicate a pattern of reckless conduct that put others' lives in danger, not unlike Seitz's decision to join the "militia" he heard about on January 6, 2021 by breaching the Capitol and physically opposing the police. That Seitz did so while on probation represents a significant breach of trust. And, as a defendant with a criminal history, Seitz cannot argue that January 6 was an aberration in an otherwise law-abiding life.

The government acknowledges Seitz's struggles with drug abuse, as described in the PSR.

But Seitz reported that he had been sober for over two years before committing the instant offense. His previous drug addiction thus cannot excuse his attempt to obstruct Congress that day.

### C.     The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Seitz's criminal conduct on January 6 was the epitome of disrespect for the law. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.     The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[4] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

#### *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration. Although Seitz has now accepted responsibility for his conduct via his stipulated trial, his social media statements in the hours after

---

[4] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

the attack on the Capitol on January 6 were those of a man who was proud of his criminal conduct. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan). Seitz was "laughing out loud" at his recollection that he "didnt expect to be on the frontline storming the capitol and taking the building lol." He "dgaf [didn't give a fuck]" and indignantly maintained that all of his conduct was legal. Most concerning, he indicated that he and other Trump supporters should amass weapons to get ready for the next fight: "*Pile guns and wait for the war to start*[.]" (emphasis added). In his post-arrest interview, he similarly expressed no remorse.

These statements demonstrate that Seitz's sentence must be sufficient to provide specific deterrence from committing future crimes, particularly in light of the looming 2024 election.   The fact that Seitz committed the offense of conviction while on probation suggests that supervision was not sufficient in the past to deter him from criminal activity.

### E.   The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying

with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.   Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord* United States v. Sanchez, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Daniel Leyden*, 21-cr-314 (TNM), Sent. Hrg. Tr. at 38 ("I think the government rightly points out generally the best way to avoid unwarranted sentencing disparities is to follow the guidelines.") (statement of Judge McFadden); *United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.").

20

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[5]

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses

---

[5] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[6]

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. No previously sentenced case contains the same balance of aggravating and mitigating factors present here. In particular, Seitz's case is more aggravated than many other defendants convicted of obstruction of an official proceeding whose offense level was 14. First, many of those defendants did not physically oppose the police. Seitz "pushed and pushed," worked with a crowd to try to open a door to allow rioters in, and grabbed an officer's baton, but Seitz engaged in conduct serious enough to lead Probation to recommend an eight-point enhancement for conduct threatening injury or property damage. Second, Seitz has criminal history, and is not deserving of the same leniency that a first-time offender might receive.

These two differences, for example, distinguish *United States v. Andrew Alan Hernandez*, 21-cr-445-CKK from Seitz's case. Hernandez pled guilty to one count of obstruction of an official proceeding for his conduct on January 6. Similar to Seitz's messages to his family members leading up to January 6, Hernandez posted to social media in advance of January 6 about "fighting" on January 6: "If people do not fight now go out and protest the vote/election fraud. Than [sic] your voting days are over. They are trying to steal the vote and will perfect and protect their fraudulent voting system when in power." *See* 21-cr-445, Gov't Sent. Memo, Doc. 54 at 11. Unlike Seitz,

---

[6] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Hernandez entered the Senate Chamber itself. Like Seitz, Hernandez's adjusted offense level was also 14, but unlike Seitz, Hernandez's criminal history category was I. Judge Kollar-Kotelly sentenced Hernandez to 18 months imprisonment, in the middle of his 15-21 month guidelines range.

The same facts – Seitz's criminal history and his direct engagement with law enforcement on January 6 -- also distinguish Seitz from William Calhoun, 21-cr-116 (DLF), whom the Court sentenced to 18 months' incarceration after convicting him of violating 18 U.S.C. § 1512(c)(2) at trial. Calhoun, like Seitz, made his intentions about January 6 very clear in social media postings and messages both before and after the events of January 6, 2021. *See United States v. Calhoun*, Gov't Sent. Memo, Doc. 171 at 4-6, 10-12; *see e.g.*, *id.* at 8 ("This is it. We're storming the Capitol."). Granted, Calhoun went to trial and was convicted at trial of additional charges. But Calhoun had no criminal history and did not directly engage with law enforcement physically on January 6. This Court ultimately sentenced Calhoun to 18 months imprisonment.

## VII.    RESTITUTION

Under 18 U.S.C. § 3556, a sentencing court must determine whether and how to impose restitution in a federal criminal case. Because a federal court possesses no "inherent authority to order restitution," *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012), it can impose restitution only when authorized by statute, *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). First, the Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *Papagno*, 639 F.3d at 1096; *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).

Second, the Mandatory Victims Restitution Act ("MVRA"), Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA. *Papagno*, 639 F.3d at 1096. The MVRA applies to certain offenses including those "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss," 18 U.S.C. § 3663A(c)(1)(B), a "crime of violence," § 3663A(c)(1)(A)(i), or "an offense against property … including any offense committed by fraud or deceit," § 3663A(c)(1)(A)(ii). *See Fair*, 699 F.3d at 512 (citation omitted). But Seitz was convicted of a violation of an offense under Title 18, the VWPA does apply.

The applicable procedures for restitution orders issued and enforced under these two statutes is found in 18 U.S.C. § 3664. *See* 18 U.S.C. § 3556 (directing that sentencing court "shall" impose restitution under the MVRA, "may" impose restitution under the VWPA, and "shall" use the procedures set out in Section 3664).

Both [t]he VWPA and MVRA require identification of a victim, defined in both statutes as "a person directly and proximately harmed as a result of" the offense of conviction. *Hughey v. United States*, 495 U.S. 411, 418 (1990) (interpreting the VWPA). Both statutes identify similar covered costs, including lost property and certain expenses of recovering from bodily injury. *See Papagno*, 639 F.3d at 1097-97; 18 U.S.C. §§ 3663(b), 3663A(b). Finally, under both the statutes, the government bears the burden by a preponderance of the evidence to establish the amount of loss suffered by the victim. *United States v. Bikundi*, 926 F.3d 761, 791 (D.C. Cir. 2019).

In deciding whether to impose restitution under the VWPA, the sentencing court must take account of the victim's losses, the defendant's financial resources, and "such other factors as the court deems appropriate." *United States v. Williams*, 353 F. Supp. 3d 14, 23-24 (D.D.C. 2019)

(quoting 18 U.S.C. § 3663(a)(1)(B)(i)). The MVRA, by contrast, requires imposition of full restitution without respect to a defendant's ability to pay.[7]

Because Seitz in this case engaged in criminal conduct in tandem with hundreds of other defendants charged in other January 6 cases, and [his or her] criminal conduct was a "proximate cause" of the victims' losses if not a "cause in fact," the Court has discretion to apportion restitution and hold Seitz responsible for his individual contribution to the victims' total losses. *See Paroline v. United States*, 572 U.S. 434, 458 (2014) (holding that in aggregate causation cases, the sentencing court "should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses"). *See also United States v. Monzel*, 930 F.3d 470, 476-77, 485 (D.C. Cir. 2019) (affirming $7,500 in restitution toward more than a $3 million total loss, against a defendant who possessed a single pornographic image of the child victim; the restitution amount was reasonable even though the "government was unable to offer anything more than 'speculation' as to [the defendant's] individual causal contribution to [the victim's] harm"; the sentencing court was not required to "show[] every step of its homework," or generate a "formulaic computation," but simply make a "reasoned judgment.").

More specifically, the Court should require Seitz to pay $2,000 in restitution for his conviction on Count One. This amount fairly reflects Seitz's role in the offense and the damages resulting from his conduct. Moreover, in cases where the parties have entered into a guilty plea agreement, two thousand dollars has consistently been the agreed upon amount of restitution and the amount of restitution imposed by judges of this Court where Seitz was not directly and

---

[7] Both statutes permit the sentencing court to decline to impose restitution where doing so will "complicat[e]" or "prolong[]" the sentencing process. *See* 18 U.S.C. §§ 3663(a)(1)(B)(ii), 3663A(c)(3)(B).

personally involved in damaging property. Accordingly, such a restitution order avoids sentencing disparity.

## VIII.   CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 21 months incarceration, the midpoint of the applicable guideline range; 36 months supervised release; $2,000 in restitution; and a special assessment of $125, consisting of $100 for Count 1 and $25 for Count 3.

<div style="margin-left: 40%;">

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:      /s/ Katherine E. Boyles
         Katherine Boyles
         Assistant United States Attorney
         D. Conn. Fed. Bar No. PHV20325
         United States Attorney's Office
         601 D Street NW
         Washington, D.C. 20001
         Email: Katherine.Boyles@usdoj.gov
         Phone: 203-931-5088

</div>