**UNITED STATES DISTRICT COURT**
**THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **21-cr-279 (DLF)** |
| v. | : | |
| | : | |
| ETHAN C. SEITZ, | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION TO VACATE COUNT ONE AND OPPOSITION**
**TO DEFENDANT'S MOTION FOR RECONSIDERATION ON COUNT THREE**

The United States, through undersigned counsel, respectfully files this brief in opposition to Defendant Ethan Seitz's Motion for Reconsideration, Doc. 77. In his motion, Defendant asks for reconsideration of the Court's findings of his guilt on both Counts One and Three. Through this filing, the government instead moves the Court to vacate Defendant's conviction on Count One and to deny Defendant's Motion in all respects. Though the government now moves to vacate the conviction on Count One, the Court's decision as to Count Three was correct and should not be reconsidered. And, in any event, the Motion for Reconsideration is an inappropriate vehicle for any of the relief Defendant seeks. The Court should therefore deny Defendant's motion and sentence Defendant on Count Three.

## I.        PROCEDURAL HISTORY

On April 2, 2021, a grand jury returned an indictment charging the defendant with violations of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One), 18 U.S.C. § 1752(a)(1) (Count Two), 18 U.S.C. § 1752(a)(2) (Count Three), and 40 U.S.C. § 5104(e)(2)(D) & (G) (Counts Four and Five, respectively). On August 8, 2023, following a stipulated bench trial, this Court found Defendant guilty on Counts One and Three. On Defendant's Motion to Continue Sentencing, the Court postponed sentencing to await the Supreme Court's decision in *Fischer*, released on June 28, 2024. *See* Mot., 65; 12/22/2023 Minute Order. On July 21, 2024, the Court issued a Minute Order

1

resetting sentencing in this case for September 13, 2024, with any sentencing memoranda due on September 9, 2024. *See* 7/21/24 Minute Order. On August 9, 2024, Defendant filed a motion to reconsider finding of guilt on Count One and Three. Doc. 77.

## II.    ARGUMENT

### A.  Motion to Vacate Count One

After careful consideration of the facts of this case and the Supreme Court's *Fischer* decision, the government respectfully moves the Court to vacate its verdict as to Count One of the Indictment, in the interests of justice. The Supreme Court's holding in *Fischer* renders the elements that the Court considered at the August 2023 stipulated trial in this case incomplete. *See Fischer v. United States*, 144 S. Ct. 2176 (2024). This amounts to reversible trial error, which warrants vacating the defendant's conviction on Count One. *See United States v. Reynoso*, 38 F.4th 1083, 1090–91 (D.C. Cir. 2022). The government does not intend to seek retrial on this Count.

Defendant has instead requested that this Court reconsider the evidence and render a judgment of acquittal. That procedural vehicle, however, is foreclosed by both principles of procedural regularity and D.C. Circuit precedent holding that "a defendant cannot make out a sufficiency challenge as to offense elements that the government had no requirement to prove at trial under then-prevailing law." *Reynoso*, 38 F.4th at 1091 (explaining that any error in those circumstances "is 'properly understood as a claim of trial error' in failing to instruct the jury on the omitted element"). As explained below, the only remedy available to Defendant at this juncture is that the Court vacate his conviction on Count One.

**B.  Defendant's Motion to Reconsider is Moot as to Count One**

In light of the government's motion to vacate Defendant's conviction on Count One, Defendant's request to reconsider the verdict on Count One is therefore moot, and the Court should deny it.

**C.  The Court's Verdict on Count Three Should Not Be Disturbed**

Beyond Count One, Defendant also seeks to have the Court reconsider its finding of guilt on Count Three, in which this Court found Defendant guilty of disorderly or disruptive conduct within a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2). Within this section of his Motion, Defendant argues for the first time that § 1752(a)(2) requires that he subjectively knew that the Vice President was within the restricted perimeter established on January 6, 2021. This portion of the Motion should be denied for several reasons.

*First,* as discussed below, a motion for reconsideration of a guilty verdict over a year after the entry of that verdict, is an inappropriate vehicle for evaluating the sufficiency of the parties' stipulated evidence at this trial.

*Second*, in contrast to Count One, there has been no change in the law governing Count Three, and thus, there is no legal error with respect to the Court's verdict. While the D.C. Circuit has "taken up the issue of whether under 18 U.S.C. 1752(a), the law requires that a defendant…have knowledge of the existence of one of the facts listed in the definition of 'restricted building or grounds,'" Mot. at 5, the Court's instructions here properly reflect the current state of the law. Indeed, since the verdict in this case, this Court has ruled that the government does not need to prove that a defendant knew of Vice President Pence's presence at the Capitol on January 6, 2021. *United States v. Raymond Chambers II*, 23-cr-300 (DLF), Pretrial Conf. Tr. 13-14 ("I do believe that the fairest, most reasonable reading of the statute is that the statutory provision

3

regarding the Secret Service protectee, here the vice president, is a jurisdictional element and therefore is exempt from the mens rea requirement that the defendant act knowingly with regard to that provision."). The Court's verdict on this count should thus remain undisturbed.

*Third*, Defendant has in no way preserved any argument that he is not guilty of Count Three of the Indictment. The parties' stipulated trial documents expressly reserved Defendant's arguments regarding the inapplicability of § 1512. *See* Doc. 63, Statement of Facts in Support of Stipulated Trial, at 12 ("Without waiving any arguments in Mr. Seitz's Motion to Dismiss Count 1, the parties agree that if the Court finds the existence of these facts beyond a reasonable doubt, the defendant stipulates that this evidence would establish each and every element of Counts 1 and 3 of the Indictment, in light of the Court's ruling on the Motion to Dismiss Count 1 and without waiving the defendant's objection to the Court's ruling."). This reservation in the Stipulated Facts related back to Defendant's Motion to Dismiss Count One, Doc. 41. Defendant also filed a Motion to Dismiss Counts Two and Three, Doc. 42, but that motion focused entirely on an argument that the Vice President was not, as a factual matter, "temporarily visiting" the Capitol on January 6. Nowhere in the Motion to Dismiss Counts Two and Three did Defendant raise any argument that the statute also required that Defendant subjectively know that the Vice President was within the restricted perimeter on January 6, 2021. Defendant failed to raise this argument in any pretrial briefing, failed to raise this argument in any of the reservations of rights in the Stipulated Trial filings, and further failed to timely raise this argument in the last year since this Court issued its verdict in this case, notwithstanding the fact that Judge Lamberth issued the first decision requiring this new element in § 1752 crimes on May 18, 2023 and Judge Nichols joined that decision in December 2023, *see United States v. Bingert*, 21-cr-91 (RCL), Doc. 163, Note to Counsel; *United States v. Elizalde*, 704 F. Supp. 3d 244 (D.D.C. 2023) (Nichols, J.).

*Fourth,* reconsideration of the verdict would be particularly inappropriate based on the facts of this case. Defendant cared enough about the presidential election and election fraud to travel by himself from Ohio to Washington, D.C. to attend former President Trump's rally. Defendant attended the rally where former President Trump discussed Vice President Pence and his role in the certification. And Defendant, who referred in a Facebook message to the "procedural vote," admitted that he knew that the certification of the Electoral College vote was taking place at the U.S. Capitol on January 6, and that he stormed the Capitol to send a message to Congress, and to stop the certification of the Electoral College vote. The idea that Defendant could have this level of knowledge and intent regarding the election and the certification, and yet could somehow be clueless that Vice President Pence was going to be there that day, is implausible. Anyone who, like Defendant, was following the election and the former President's stories about election fraud, who decided to travel halfway across the country because of concerns about the election, who attended a rally that specifically discussed the Vice President's role in the certification, who was aware that the certification was taking place, that it was a "procedural vote," and who stormed the Capitol to try to stop the vote from taking place, would have been aware of one of the most central actors in the certification: the Vice President. The Court's verdict thus was correct under even a heightened *mens rea* requirement. And given that Defendant did not preserve the error, a more deferential standard of review would likely apply. In any event, reconsideration is an improper vehicle, particularly at this juncture. If the D.C. Circuit later imposes a heightened *mens rea* requirement for convictions under 18 U.S.C. § 1752, the parties and the Court can address the implications for Count Three at that point.

**D.  The Motion to Reconsider the Guilty Verdict is Procedurally Improper**

Defendant's Motion is also procedurally improper. It is predicated upon the Court's authority to reconsider the evidence in light of a change of the law. According to Defendant, the Court can do so as part of its inherent authority. Mot. at 1 (citing *United States v. DaSilva*, 21-cr-564, 2024 WL 519909 (D.D.C. Feb. 8, 2024)). But the motion is not based on or governed by Rule 29 or any specific Federal Rule. The government respectfully disagrees with *DaSilva*'s outcome and the underlying analysis of this inherent authority. A verdict is final, and it cannot be "reconsidered" months later outside of the strictures of Rules 29 and 33.

The Supreme Court has previously considered a trial court's authority to reconsider past acquittals. For example, in 2005, the Supreme Court considered a trial court's reconsideration of a mid-trial acquittal. *Smith v. Massachusetts*, 543 U.S. 462 (2005). That acquittal, the Court held, was a final ruling, not subject to revision, "unless the availability of reconsideration has been plainly established by pre-existing rule or case authority expressly applicable to midtrial rulings on the sufficiency of the evidence." *Id.* at 473.

Likewise, the Supreme Court has considered cases in which a trial court attempts to revisit a jury's finding of guilt. In *Carlisle v. United States*, 517 U.S. 416 (1996), the Supreme Court rejected the trial court's grant of an untimely motion for a judgment of acquittal. In that case, the defendant moved for a judgment of acquittal one day later than the rules permitted, and the trial judge initially denied the motion both on the merits and as untimely. *Id.* at 418. At sentencing, the trial court reversed course and entered a judgment of acquittal. *Id.* The Supreme Court held this was improper. *Id.* at 433. In so ruling, the Court rejected the defendant's arguments that Federal Rule of Criminal Procedure 2 "vests the court with the supervisory power to enter judgment of acquittal" and that the trial court's "inherent supervisory power" provided such authority. *See id.*

6

at 420–28. The Court explained: "Whatever the scope of this 'inherent power,' . . . it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Id.* at 426. Relevant here, the government is unaware of any Federal Rule of Criminal Procedure that would allow a district court to reopen a guilty verdict entered at the conclusion of a bench trial over one year after the verdict.[1]

The government has endeavored to identify cases in which a trial court vacated or reconsidered its own bench verdict following a contested or stipulated trial. Beyond *United States v. DaSilva*, No. 21-cr-564 (CJN), 2024 WL 519909 (D.D.C. Feb. 8, 2024), there appears to exist scant authority indicating that this procedure is permissible. Indeed, some state appellate courts have expressly prohibited such a procedure.[2] In fact, the government was not able to find *any* federal cases supporting the proposition that a trial court has the authority to reconsider a guilty verdict out of time, other than two district court cases: *DaSilva* and *United States v. Mendoza*, 390 F. Supp. 2d 925 (N.D. Cal. 2005).

In *Mendoza*, the district court "reconsidered its guilty verdict, vacated its finding of guilty, and dismissed the indictment" in an illegal re-entry case based on an intervening change in circuit law between the original verdict and the dismissal. 390 F. Supp. 2d at 928. But the government

---

[1] The defendant cites *United States v. Ibarra*, 502 U.S. 1, 5 (1991), for the proposition that the Court can reconsider prior rulings thereby providing it "the opportunity to correct [its] own alleged errors." Mot. at 1. However, this case is not applicable as it deals with *timely* motions to reconsider. *Ibarra*, 502 U.S. at 5. Over 381 days have passed since the verdict in this case and there has been no change in the law governing Count Three, as discussed in Part D.

[2] *See People v. Dobson*, 25 N.Y.S.3d 313, 315 (N.Y. App. Div. 2016) ("A Trial Judge who has rendered a guilty verdict after a nonjury trial has neither inherent power nor statutory authority to reconsider his [or her] factual determination. Although he [or she] may correct clerical or ministerial errors, he [or she] is without authority to reassess the facts and change a guilty verdict to not guilty." (quotations omitted)); *State v. Williams*, 891 So. 2d 26, 30 (La. Ct. App. 2004) ("We conclude that filing a motion for post verdict judgment of acquittal in a bench trial was procedurally improper.")

appealed such dismissal. In ruling, the Ninth Circuit did not directly address the propriety of the district court's reconsideration, because the Ninth Circuit had reheard *en banc* the case that had purportedly changed the law. *See United States v. Tafoya-Mendoza*, 232 F. App'x 675 (9th Cir. 2007), *as amended on denial of reh'g and reh'g en banc* (Aug. 17, 2007). The Ninth Circuit, however, did reverse the district court's dismissal of the indictment and remanded for further proceedings. *Id.* In light of this appellate history, *Mendoza* lends scant support for the notion that district courts have authority to revisit their own guilty verdicts and dismiss the underlying charges.

In *DaSilva*, Judge Nichols chose to reconsider a previous conviction in another January 6 case, after he had subsequently determined a new reading of the *mens rea* requirement in 18 U.S.C. § 1752(a)(1) and (2). The defendant, Matthew DaSilva, was convicted following a bench trial of various offenses, including three violations involving 18 U.S.C. § 1752. *DaSilva*, 2024 WL 519909 at *1. In a later case, *United States v. Elizalde*, 23-cr-170 (CJN), 2023 WL 8354932 (D.D.C. Dec. 1, 2023), Judge Nichols concluded that a conviction under 18 U.S.C. § 1752 required proof of an additional element that had not been included in the legal instructions in *DaSilva*.[3] He therefore reconsidered his findings of guilt as to Section 1752 offenses in *DaSilva*. 2024 WL 519909 at *7.

---

[3] Specifically, Judge Nichols concluded that conviction under Section 1752 required proof, beyond a reasonable doubt, that the defendant "knew that a Secret Service protectee would be present at the Capitol." *DaSilva*, 2024 WL 519909 at *6. The government, and many courts within this district, disagree with Judge Nichols and do not require this specific knowledge of a Secret Service protectee's presence. *See United States v. Carnell et al.,* 23-cr-139 (BAH) (Memorandum Opinion, Feb. 15, 2024, ECF No. 98 at 10-12); *United States v. Easterday*, 22-cr-404 (JEB), 2024 WL 1513527, at *10 (D.D.C. Apr. 8, 2024); *United States v. Warnagiris*, 21-cr-382 (PLF), ECF No. 128 at 4–5 (D.D.C. Mar. 28, 2024); *United States v. Chambers*, 23-cr-300 (DLF) (D.D.C. Mar. 14, 2024); *United States v. Kenyon*, No. 23-cr-101 (ABJ), (Mar. 12, 2024); *United States v. Ibrahim*, No. 21-cr-496 (TJK) (Apr. 16, 2024); *United States v. Smith*, No. 23-cr-71 (RDM), Trial Tr. at 82-97 (May 10, 2024); *United States v. Nester*, 22-cr-183 (TSC) (D.D.C. Mar. 5, 2024); Trial Tr. at 1199–1200; Mem. Court's Responses to Jury Questions at 4, *United States v. Rhine*, No. 21-cr-687 (RC), ECF No. 104 (D.D.C. Apr. 24, 2023); Trial Tr. at 330–32, *United States v. Griffin*, No. 21-cr-92 (TNM), ECF No. 106 (D.D.C. Mar. 22, 2022). The D.C. Circuit is expected to decide this issue in *United States v. Griffin*, No. 22-3042 (oral argument held Dec. 4, 2023).

To justify this reconsideration, and in the absence of a timely motion for new trial by the defendant, Judge Nichols held that a court's authority to reconsider interlocutory orders "logically extends to findings of guilty in bench trials," because findings of guilt do not divest the court of jurisdiction and permit appeal. *Id.* at *3–4. But a finding of guilt in a criminal case is not ordinarily subject to an interlocutory appeal. To the contrary, the Federal Rules of Criminal Procedure set out in detail the narrow circumstances in which a guilty verdict can be revisited. *See, e.g.*, Fed. R. Crim. P. 29, 33. And the D.C. Circuit has repeatedly emphasized the finality of jury verdicts. *Cf. United States v. Campbell*, 684 F.2d 141, 151–52 (D.C. Cir. 1982) (holding that alleged juror misconduct did not justify overturning verdict and emphasizing "the finality of the verdict"); *United States v. Williams-Davis*, 90 F.3d 490, 505 (D.C. Cir. 1996) (emphasizing the importance of "[p]reserving the finality of jury verdicts" to denying defendant a hearing on post-trial juror allegations of pre-deliberation discussions).

It is unclear why the Court should approach the finality of its verdict any differently than a verdict rendered by a jury. *See People v. Maharaj*, 679 N.E.2d 631, 657 (N.Y. 1997) ("Simply because the court was acting as both fact finder and Judge of the law does not allow for a result different from that dictated when a court presiding over a jury trial [made a legal error] . . . . After formal rendition of a verdict at a bench trial, a trial court lacks authority to reweigh the factual evidence and reconsider the verdict.") (citations omitted). If a jury were to return a guilty verdict and, later, some other juries returned different verdicts on allegedly similar facts and under similar legal instructions, the court would not recall the jury, reopen the verdict, and ask the jury to deliberate again. Indeed, even in the context of Rule 29, despite the fact Rule 29 only refers to juries, courts have held that the same standard applies to bench trials and judges too. *See United*

*States v. Jabr*, 18-cr-105-PLF, 2019 WL 13110682, at *4 (D.D.C. May 16, 2019) (collecting cases).

The *DaSilva* opinion attempts to square this circle largely through a technical interpretation of the Federal Rules of Criminal Procedure distinguishing between juries and judges as factfinder for purposes of Rule 29. This interpretation is almost entirely underpinned by *DaSilva*'s statement that "[j]uries return guilty 'verdicts,' judges render 'findings' of guilty." 2024 WL 519909 at *5. But courts regularly use the terms "verdict of guilty" and "finding of guilt" interchangeably, regardless of whether the factfinder is a jury or judge—even in some of the cases *DaSilva* cites. *See, e.g.*, *Ex Parte Lange*, 85 U.S. 163, 201–02 (1873) (referring to jury's "finding" of guilt); *Smith v. Massachusetts*, 543 U.S. 462 (2005) (discussing impact of judge's "directed verdict" on double jeopardy considerations).

Thus, as a matter of law, the procedural framing – a Motion to Reconsider – is inadequate. If courts could reconsider such findings at any time, the time limits imposed by Rule 29 and Rule 33 would lose their meaning in its entirety.

### E.  The Proper Remedy is Vacatur and Motion to Vacate

Putting Defendant's erroneous reliance on reconsideration aside, the government agrees that the legal requirements included parties' Statement of Facts for Stipulated Trial, Doc. 63, is incomplete in light of *Fischer*. The fact that the Court considered instructions that *later* turned out to be incorrect may amount to an instructional, or trial, error, necessitating that the Court vacate the defendant's convictions on that count. *United States v. Reynoso*, 38 F.4th 1083, 1090–91 (D.C. Cir. 2022) ("[A] defendant cannot make out a sufficiency challenge as to offense elements that the government had no requirement to prove at trial under then-prevailing law."). On a procedural record like the one in this case, the D.C. Circuit held that "a sufficiency claim is a non sequitur."

*Id*. at 1091. "If the [finder-of-fact], consistent with then-prevailing law, is never asked to find the existence of something later established to be an offense element, there is no freestanding insufficiency-of-the-evidence claim as to that element." *Id.* at 1090. Since the Court drew the elements and fact-finding for Count One from then-prevailing law, it was not asked to find the existence of the additional fact required by the Supreme Court in *Fischer*.

Given the current pre-sentencing procedural posture, the defendant's apparent trial-error claim is best understood as an (untimely) Rule 33 Motion. Fed. R. Crim. Pro. 33(a) (the Court may grant "a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment."); *United States v. Kirsch*, 151 F. Supp. 3d 311, 315 (W.D.N.Y. 2015) (noting that a significant intervening change in the law may constitute a valid basis to extend time under Rule 45(b)(1)(B)). And, as in any Rule 33 motion, the proper remedy, if any, is a new trial.

In addition to being procedurally proper, vacatur – as opposed to a judgment of acquittal – is also most consistent with *Fischer*'s substantive holding. As the Court knows, *Fischer* did not reject the application of Section 1512(c)(2) to all January 6 prosecutions. Rather, the Supreme Court explained that the government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in the proceeding. Although the Court did not consider whether the defendant "impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in the proceeding – such as witness testimony or intangible information – or attempted

to do so," *Fischer*, 144 S. Ct. at 2190, the government should not be deprived of its ability to make that showing in a future retrial, if it so chooses.

The procedural pathway is vacatur. When reconsidering a finding of guilt in light of a potential legal error, the district court sits in a similar position to an appellate court considering the same question. *Bravo-Fernandez v. United States*, 580 U.S. 5, 20 (2016). The ordinary remedy is vacatur, not reversal without an opportunity for retrial. *Id.*; *United States v. Argueta-Rosales*, 819 F.3d 1149, 1151 (9th Cir. 2016) (vacating and remanding for a retrial). While the government does not intend to retry the defendant on Count One at this time, the Court should accomplish this by granting the government's motion to vacate, not "reconsidering" and reversing its verdict.

## III.     CONCLUSION

For the foregoing reasons, the government asks the Court to deny Defendant's motion to reconsider Counts One and Three. The government further asks the Court to grant its motion to vacate Defendant's conviction on Count One based on the application of *Fischer* to the facts and circumstances of this case.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:      */s/ Katherine E. Boyles*
Katherine Boyles
Assistant United States Attorney
D. Conn. Fed. Bar No. PHV20325
United States Attorney's Office
601 D Street NW
Washington, D.C. 20001
Email: Katherine.Boyles@usdoj.gov
Phone: 203-931-5088